**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:23-cv-22387-BB**

GRILLO'S PICKLES, INC.,

      Plaintiff,

v.

PATRIOT PICKLE, INC.,

      Defendant.

_____/

**<u>DEFENDANT PATRIOT PICKLE, INC.'S MOTION TO DISMISS THE AMENDED
COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE AND
INCORPORATED MEMORANDUM OF LAW</u>**

Eliot Pedrosa, Esq.
Fla. Bar No. 182443
Email: epedrosa@jonesday.com
Angela Korge, Esq.
Fla. Bar No. 125419
Email: akorge@jonesday.com
JONES DAY
600 Brickell Ave, Suite 3300
Miami, FL 33131
Telephone: (305) 714-9700
Facsimile: (305) 713-9799

Harold K. Gordon, Esq. (*Pro Hac Vice*)
Fla. Bar No. 0088641
Email: hkgordon@jonesday.com
Jennifer L. Del Medico, Esq. (*Pro Hac Vice*)
Email: jdelmedico@jonesday.com
JONES DAY
250 Vesey St
New York, NY 10281
Telephone: (212) 326-3939

*Attorneys for Patriot Pickle, Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    I.     THE GRILLO'S-PATRIOT RELATIONSHIP.............................................. 2

    II.    GRILLO'S SUES PATRIOT AND OTHERS IN NEW JERSEY....................... 3

    III.   GRILLO'S SUES PATRIOT IN FLORIDA. ...................................................... 4

ARGUMENT ....................................................................................................................... 5

    I.     THE COURT LACKS PERSONAL JURISDICTION OVER PATRIOT. .......... 5

         A.    The Amended Complaint does not satisfy the Florida long-arm statute. ........................................................................................................ 5

         B.    Exercising personal jurisdiction over Patriot would violate due process.......................................................................................................... 8

    II.    VENUE IS NOT PROPER IN THIS DISTRICT. ............................................... 10

         A.    The sale of Whole Foods 365 Pickles in this District does not establish proper venue.......................................................................... 10

         B.    A claim-by-claim analysis forecloses venue in this District.................... 11

    III.   ALTERNATIVELY, THE COURT SHOULD TRANSFER VENUE TO THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1404(a). ............................................................................................................ 12

         A.    Standard for a motion to transfer venue under § 1404(a). ...................... 13

         B.    The § 1404(a) factors weigh heavily in favor of transfer. ...................... 13

         C.    The first-filed rule also supports transfer to New Jersey. ...................... 15

    IV.   GRILLO'S AMENDED COMPLAINT IS A SHOTGUN PLEADING. ........... 15

    V.    GRILLO'S AMENDED COMPLAINT FAILS TO STATE A CLAIM. ........... 16

         A.    Grillo's fails plausibly to allege a trade secret misappropriation claim..................................................................................................... 16

             1.    Pleading standard for a trade secret misappropriation claim. ...... 16

             2.    Grillo's trade secret misappropriation claims are based on generally known or readily ascertainable information................ 16

             3.    Grillo's ingredients are not unique. ............................................. 17

             4.    Grillo's trade secret misappropriation claims are contradicted by the information on the nutritional labels. .......... 18

         B.    Grillo's breach of contract claims fail as a matter of law. ...................... 18

             1.    The NDA is no longer effective.................................................. 19

      2.     Grillo's Pickles, Inc. is not a party to the agreements. ................ 20

CONCLUSION .................................................................................................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Page**

**CASES**

*Allied Marine, LLC v. S2 Yachts, Inc.*,
   No. 09-cv-21329, 2009 WL 10698780 (S. D. Fla. Sept. 2, 2009) ...........................................13

*Am. Red Cross v. Palm Beach Blood Bank, Inc.*,
   143 F.3d 1407 (11th Cir. 1998) ............................................................................................17

*AutoNation, Inc. v. Hall*,
   No. 19-cv-60291, 2019 WL 3712008 (S.D. Fla. May 29, 2019).............................................11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................16

*Bond v. Ivy Tech State Coll.*,
   167 Fed. App'x 103 (11th Cir. 2006) .....................................................................................8

*BPI Sports, LLC v. PHD Fitness LLC*,
   No. 14-cv-60069, 2014 WL 11706458 (S.D. Fla. June 13, 2014)...........................................10

*Carmouche v. Tamborlee Mgmt., Inc.*,
   789 F.3d 1201 (11th Cir. 2015) ..............................................................................................5

*Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*,
   713 F.3d 71 (11th Cir. 2013) ...............................................................................................15

*Compulife Software Inc. v. Newman*,
   959 F.3d 1288 (11th Cir. 2020) .............................................................................................16

*Corioliss, Ltd. v. Corioliss USA, Inc.*,
   2008 WL 4272746 (S.D. Fla., Sept. 17, 2008) ...............................................................14, 15

*Cumberland Cnty. Improvement Auth. v. GSP Recycling Co.*,
   818 A.2d 431 (N.J. Super. Ct. App. Div. 2003)....................................................................19

*Custom Fab, Inc. v. Kirkland*,
   No. 13-cv-01511, 2014 WL 260090 (M.D. Fla. Jan. 23, 2014) ..........................................5, 6

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)..............................................................................................................9

*Frontline Int'l, Inc. v. Edelcar, Inc.*,
   No. 10-cv-01351, 2011 WL 13209612 (M.D. Fla. Apr. 6, 2011)...............................................9

*Goldfarb v. Solimine*,
   245 A.3d 570 (N.J. 2021).........................................................................................................20

*Greiser v. Drinkard*,
   No. 17-cv-60975, 2017 WL 7788165 (S.D. Fla. Dec. 8, 2017)..............................................10

*Iglesias v. Pernod Ricard, S.A.*,
   No. 20-cv-20157, 2020 WL 13367918 (S.D. Fla. Oct. 30, 2020) .............................................5

*Ins. Co. of State of Pa. v. Don Siegel Constr., Inc.*,
   2006 WL 1667175 (N.J. Super. Ct. App. Div. June 19, 2006)................................................20

*Jenkins Brick Co. v. Bremer*,
   321 F.3d 1366 (11th Cir. 2003) .................................................................................10, 11, 12

*Keystone Plastics, Inc. v. C & P Plastics, Inc.*,
   340 F. Supp. 55 (S.D. Fla. 1972) .............................................................................................17

*Loans of Am. FL, LLC v. Rapid Auto Loans, LLC*,
   No. 10-cv-60416, 2010 WL 2754336 (S.D. Fla. July 12, 2010) ......................................17, 18

*Managed Care Solutions, Inc. v. Community Health Systems, Inc.*,
   2011 WL 6024572 (S.D. Fla. Dec. 2, 2011) ............................................................................12

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) ...............................................................................................13

*Marquez v. Amazon.com, Inc.*,
   69 F.4th 1262 (11th Cir. 2023) ..................................................................................................2

*McCall v. Zotos*,
   No. 22-11725, 2023 WL 3946827 (11th Cir. June 12, 2023)................................................8, 9

*Measured Wealth Private Client Group, LLC v. Foster*,
   No. 20-cv-80148, 2020 WL 3963716 (S.D. Fla. July 13, 2020) ......................................16, 18

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981)..................................................................................................................14

*Robey v. JPMorgan Chase Bank, N.A.*,
   343 F. Supp. 3d 1304 (S.D. Fla. 2018) .....................................................................................8

iv

*Rodriguez v. Imperial Brands PLC*,
  No. 20-cv-23287, 2022 WL 18704831 (S.D. Fla. Nov. 2, 2022) ...........................................11

*SANDP Sols., Inc. v. Silver Logic, LLC*,
  No. 21-cv-80949, 2022 WL 7049243 (S.D. Fla. Jan. 14, 2022).....................................5, 6, 8

*Schumacher Grp. of Del., Inc. v. Dictan*,
  327 So. 3d 404 (Fla. 3d DCA 2021) .....................................................................................8

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007).............................................................................................................13

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)...............................................................................................................13

*Stone v. CompuServe Interactive Servs., Inc.*,
  804 So. 2d 383 (Fla. 4th DCA 2001) ..................................................................................18

*TMJ Practice Mgmt. Assocs., Inc. v. Curran*,
  2017 WL 3130421 (S.D. Fla. July 24, 2017) ......................................................................12

*Wade Park Land Holdings, LLC v. Kalikow*,
  589 F. Supp. 3d 335 (S.D.N.Y. 2022)..................................................................................19

*Wai v. Rainbow Holdings*,
  315 F. Supp. 2d 1261 (S.D. Fla. 2004) ...............................................................................10

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015) .....................................................................................15, 16

*White Wave Int'l Labs, Inc. v. Lohan*,
  No. 09-cv-1260, 2010 WL 3835873 (M.D. Fla. Sept. 29, 2010)............................................6

**STATUTES**

18 U.S.C.
  § 1839(3)(B).........................................................................................................................17

28 U.S.C.
  § 1391(b)(2) .......................................................................................................................1, 10
  § 1404(a) ..............................................................................................................................13

Fla. Stat.

§ 48.193(1)(a) ...................................................................................................................5

§ 688.002(4)....................................................................................................................17

**INTRODUCTION**

Courts may exercise personal jurisdiction only where the defendant has adequate litigation-related contacts with the forum.  In its second bite at the apple, Grillo's still fails to adequately allege jurisdiction.  As jurisdictional discovery confirmed, the conduct relevant to this lawsuit—a dispute between a Massachusetts-based pickles brand (Grillo's) and a New Jersey-based pickles manufacturer (Patriot) involving alleged trade secret misappropriation as to pickles manufactured in New Jersey—did not occur in Florida.  Grillo's attempts to manufacture jurisdiction based on Patriot sourcing cucumbers from Florida (outside this District) and the fact that nonparties shipped to and sold in Florida Whole Foods 365 Pickles, packaged by Patriot in New Jersey.  Yet, the sourcing of pickles has nothing to do with this case, and Patriot does not ship or sell Whole Foods 365 Pickles anywhere—rather, another company takes over the shipping process *in New Jersey*. The Amended Complaint should thus be dismissed pursuant to Rule 12(b)(2) for two independent reasons.  First, Patriot did not commit a tortious act within Florida, as required to exercise personal jurisdiction under Florida's long-arm statute.  Second, the lack of a meaningful relationship between this lawsuit and Florida means exercising personal jurisdiction would violate due process.

Grillo's Amended Complaint does no better with venue.  To show proper venue, Grillo's must allege facts establishing that "a substantial part of the events . . . giving rise to the claim[s] occurred" in the District.  28 U.S.C. § 1391(b)(2).  But discovery just confirmed that New Jersey, not the Southern District of Florida, is the proper venue—as Grillo's seemed to recognize when it sued Patriot in New Jersey earlier this year.  Grillo's own allegations, plus discovery, show that this lawsuit concerns a business relationship and contacts that have no connection to this District. Grillo's Amended Complaint adds no new arguments to support venue, instead just doubling down on the fact that some Whole Foods 365 pickles are sold in this District.  But this is not enough for many reasons, including that venue focuses on the core activities related to the claims (such as the location of the alleged sharing of trade secrets), none of which occurred in this District. Accordingly, the Court should either dismiss Grillo's Amended Complaint pursuant to Rule 12(b)(3) or transfer venue to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

Alternatively, Grillo's Amended Complaint should be dismissed as an impermissible shotgun pleading in violation of Rule 8(a)(2) or under Rule 12(b)(6) for failure to state a claim. Grillo's has not plausibly alleged a trade secret misappropriation claim for at least three reasons. First, no trade secret exists because the information is publicly available—it is on Grillo's labels.

Second, Grillo's does not allege facts suggesting its ingredients are in any way unique or a secret. Instead, they are just the standard few ingredients for a pickle that any manufacturer would use (*i.e.*, cucumbers, salt, vinegar, water).  Third, Grillo's Amended Complaint falls short of the plausibility standard because the complaint unambiguously reveals that the sodium content for its products differs markedly from Patriot's product, evidencing the two are not "nearly identical" as Grillo's claims.  Grillo's also fails to state a claim for breach of contract because (1) the parties' Mutual Nondisclosure Agreement ("NDA"), executed in 2012, is effective for only five years, and (2) the plaintiff in this case, Grillo's Pickles, Inc., is not a party to any of the contracts at issue.

## <u>BACKGROUND</u>

This matter marks the second time in 2023 that Grillo's, a branded pickle company, has sued Patriot, a company that (among other things) manufactures, packages, labels, and ships pickles for brands owned by others.  Both suits are baseless.  And the first lawsuit helps demonstrate the defects of the instant one, even though the two cases involve different causes of action.

## I.     THE GRILLO'S-PATRIOT RELATIONSHIP.

Both parties are in the pickle business, but they focus on different aspects of that business. Grillo's sells its brand of all-natural pickles—meaning free of artificial preservatives—nationwide. Am. Compl. ¶ 9.  Patriot does not sell its own brand of all-natural pickles, but rather contracts to manufacture, package, label, and ship food brands for its customers' brands (referred to in the industry as "co-packing").  *Id.* ¶ 10.

In 2012, Grillo's Pickles, LLC—not the Plaintiff in this case, Grillo's Pickles, Inc.—and Patriot entered into negotiations for Patriot to become Grillo's co-packer of its all-natural pickles, allegedly signing an NDA in January of 2012.  *Id.* ¶ 17.[1]  That agreement provides that Grillo's and Patriot may not "disclose to any third party or use for any unauthorized purpose any Proprietary Information received from the other party."  Am. Compl., Ex. I ¶ 3.  "Proprietary Information" is defined to include any "formula" or "process," *id.* ¶ 1, but does not include, among other things, "generally known or available" information, *id.* ¶ 2.  The NDA states that "[t]he term of this agreement is for five (5) years, commencing on [January 24, 2012]."  *Id.* ¶ 11.

---

[1] Patriot treats as true the Amended Complaint's factual allegations (but not its legal or conclusory allegations) only because this case is at the motion to dismiss stage.  *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1269 (11th Cir. 2023) ("Ultimately, '[a] complaint may be dismissed for failure to state a claim when, ignoring any mere conclusory statements, the remaining allegations do not plausibly suggest that the defendant is liable.'").

From 2014 to 2016, Patriot and Grillo's Pickles, LLC entered into two additional contracts which state that the "name, recipes and formulations for Grillo's Pickles remain the sole and exclusive property of Grillo's Pickles, LLC." Am. Compl. ¶¶ 21–22. Patriot acted as one of Grillo's co-packers until mid-2021, when Grillo's ended the relationship. *Id.* ¶ 23.

## II.   GRILLO'S SUES PATRIOT AND OTHERS IN NEW JERSEY.

In January 2023, Grillo's sued Patriot, another pickle company ("Wahlburgers"), and a food products company ("ARKK"), in the District of New Jersey. *See* Compl., ECF No. 1, *Grillo's Pickles, Inc. v. Patriot Pickle Inc.*, Case No. 2:23-cv-11 (D.N.J. Jan. 3, 2023) ("*Grillo's I*"). Patriot works with Wahlburgers and ARKK to manufacture and package Wahlburgers pickles from Patriot's facility in Wayne, New Jersey, on behalf of Wahlburgers and ARKK. *See id.*, Am. Compl. ¶ 9, ECF No. 60 ("N.J. Am. Compl."). Grillo's brought claims under the Lanham Act for false advertising and under New Jersey common law for unfair competition. *Id.* ¶¶ 55–69. Grillo's alleged that the defendants made false and misleading statements by labeling Wahlburgers pickles as "all natural," "fresh," and artificial-preservative-free when lab tests showed that some containers of Wahlburgers pickles contained the preservative sodium benzoate. *Id.* ¶¶ 1–2, 34. Grillo's also alleged that the "GMO-Free" on Wahlburgers' labels is false and misleading. *Id.* ¶¶ 38–43, 53, 60b, 64c. Grillo's requested a preliminary injunction, among other relief. *Id.* at 29–30.

Grillo's Amended Complaint in the New Jersey case contained specific allegations as to personal jurisdiction and venue. Grillo's alleged that court "has general personal jurisdiction over Patriot due to its systemic and continuous contacts with the State of New Jersey." *Id.* ¶ 19. And Grillo's alleged that court "has specific personal jurisdiction over Patriot because it manufactured, packaged, falsely labeled, and shipped the Wahlburgers pickles at the core of this action from Patriot's facility in Wayne, New Jersey." *Id.* Grillo's alleged that venue was proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to [Grillo's] claim occurred" in New Jersey—specifically, that the Wahlburgers pickles were "manufactured, packaged, falsely labeled, and shipped" from Patriot's New Jersey facility. *Id.* ¶ 18.

Grillo's also alleged that "Patriot had full knowledge of Grillo's recipes" due to the past Patriot-Grillo's relationship and that "Defendants used this knowledge to formulate Wahlburgers pickle recipes to be nearly identical to Grillo's." *Id.* ¶¶ 24, 36, 58. However, despite including this allegation, Grillo's did not bring a trade secrets claim in the New Jersey case. *Id.* ¶¶ 55–69.

The litigation in the New Jersey case is stayed pending the outcome of mediation, and the court dismissed without prejudice Grillo's motion for a preliminary injunction. *See* Order, ECF No. 68, *Grillo's I*, Case No. 2:23-cv-00011 (D.N.J. August 2, 2023).

## III.   GRILLO'S SUES PATRIOT IN FLORIDA.

Having failed to make much progress in New Jersey, Grillo's opened up a second front in Florida on June 27.  The instant dispute arises in connection with Patriot manufacturing all-natural pickles for one of its customers, Whole Foods, called Whole Foods 365 pickles.  Am. Compl. ¶¶ 5, 10.  Patriot began manufacturing Whole Foods 365 pickles around May 2023.  *Id.* ¶ 25.

Grillo's alleges that Patriot disclosed Grillo's recipes and formulas to Whole Foods and used Grillo's recipes and processes to manufacture "nearly identical" pickles, all in violation of the parties' agreements.  *Id.* ¶¶ 25–26.  In support of these allegations, Grillo's alleges that Whole Foods 365 pickles and Grillo's pickles "look and taste incredibly similar" and "bear virtually identical nutritional information and are made from precisely the same ingredients." *Id.* ¶ 26.  As a result, Grillo's brings three claims: a misappropriation of trade secrets claim under the Florida Uniform Trade Secrets Act ("FUTSA") (Count I), a misappropriation of trade secrets claim under the federal Defend Trade Secrets Act ("DTSA") (Count II), and a breach of contract claim (Count III).  Pursuant to these three claims, Grillo's seeks damages and injunctive relief.[2]

However, unlike the New Jersey action, Grillo's initial complaint in this action contained no specific allegations about venue and did not even mention personal jurisdiction.  As a result, the Court held a hearing and ordered limited discovery on jurisdiction and venue related issues. *See* ECF No. 33.  Patriot produced hundreds of pages of documents in response.  After this, Grillo's filed the operative Amended Complaint with additional jurisdictional allegations.  The Amended Complaint continues to admit that neither party is incorporated in Florida nor has its principal place of business in Florida.  Grillo's is a Delaware corporation with its principal place of business in Westwood, Massachusetts.  Am. Compl. ¶ 9.  Patriot is a Delaware corporation with its principal place of business in Wayne, New Jersey, where it manufactures the Whole Foods 365 Pickles.  *Id.* ¶ 10 ("Patriot manufactures . . . Whole Foods 365 pickles from Patriot's facility in *Wayne, New Jersey* on behalf of Whole Foods." (emphasis added)).

---

[2] In connection with the complaint, Grillo's moved for a preliminary injunction on June 30.  ECF No. 9, Plaintiff's Motion for a Preliminary Injunction.  The Court is currently holding this motion in abeyance.  *See* ECF No. 33.

Patriot now moves to dismiss these claims on four separate grounds: (1) lack of personal jurisdiction over Patriot, (2) lack of venue, (3) as an impermissible shotgun pleading, and (4) for failure to state a claim.  Accordingly, the Court should either dismiss Grillo's Amended Complaint or transfer this case to a more appropriate forum (the District of New Jersey).

## ARGUMENT

### I.     THE COURT LACKS PERSONAL JURISDICTION OVER PATRIOT.

Even with jurisdictional discovery, Grillo's Amended Complaint fails to allege sufficient facts to support this Court's exercise of personal jurisdiction over Patriot.  A court may exercise personal jurisdiction over a defendant only if it would both "(1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1203 (11th Cir. 2015).  Here, Grillo's does not satisfy either requirement.

#### A.     The Amended Complaint does not satisfy the Florida long-arm statute.

Grillo's Amended Complaint fails to allege which section of the Florida long-arm statute purportedly applies and therefore should be dismissed on this basis alone.  Further, a court may exercise specific jurisdiction pursuant to the Florida long-arm statute only if a plaintiff alleges that a cause of action "aris[es] from" a list of "acts enumerated" in the statute, such as "[c]ommitting a tortious act within this state."  Fla. Stat. § 48.193(1)(a).  Rather than citing a specific act, Grillo's just baldly asserts that its allegations "satisfy the requirements of Fla. Stat. § 48.193."  Am. Compl. ¶ 14.  The Amended Complaint should be dismissed for this reason alone.  *See Iglesias v. Pernod Ricard, S.A.*, No. 20-cv-20157, 2020 WL 13367918, at *3 (S.D. Fla. Oct. 30, 2020) (finding "it is not [the Court's] role to guess as to how the Court has jurisdiction over [a] [d]efendant").

Grillo's only attempt to cite an allegedly applicable section of the long-arm statute came in its Expedited Motion (which was addressed to its original Complaint, not the operative Amended Complaint), where it argued that specific jurisdiction over Patriot exists because Patriot "commit[ed] a tortious act within this state" under Florida's long-arm statute.  ECF No. 18 at 16–17.  But no jurisdiction exists under that section.

To satisfy the long-arm statute's "tortious act within [Florida]" requirement, Grillo's "must establish that [Patriot] improperly disclosed or used the [trade secret] information **in Florida** . . . ." *SANDP Sols., Inc. v. Silver Logic, LLC*, No. 21-cv-80949, 2022 WL 7049243, at *7 (S.D. Fla. Jan. 14, 2022) (emphasis added); *see also Custom Fab, Inc. v. Kirkland*, No. 13-cv-01511, 2014 WL

260090, at *5 (M.D. Fla. Jan. 23, 2014) (finding no jurisdiction existed under Fla. Stat. § 48.193(1)(a)(2) where plaintiff "does not allege that Kirkland had any contact with Florida following her resignation" which is when the "alleged wrongs occurred, if at all").[3] But, Grillo's does **not** allege that Patriot "disclosed [its] confidential recipes and manufacturing processes to Whole Foods" **in Florida**. *See* Am. Compl. ¶ 29; *Kirkland*, 2014 WL 260090, at *5. To the contrary, Grillo's alleges that "Patriot manufactures, packages, labels and ships Whole Foods 365 pickles from Patriot's facility **in Wayne, New Jersey** on behalf of Whole Foods." Am. Compl. ¶ 10 (emphasis added). Thus, the Court lacks personal jurisdiction here. *SANDP Sols., Inc.*, 2022 WL 7049243, at *7 (granting motion to dismiss for lack of personal jurisdiction where plaintiff "failed to establish that the use or disclosure of confidential information was committed in Florida"); *Kirkland*, 2014 WL 260090, at *5 (same).

Failing to allege that the conduct giving rise to its claims occurred in Florida, Grillo's attempts to hang its jurisdictional hopes on four claimed ancillary contacts between Patriot and Florida—that Patriot (1) "plann[ed] to serve the Florida market for the Whole Foods 365 pickles" since February 2022, (2) "sourced ▮▮▮▮▮▮▮▮▮▮▮ the cucumbers used to produce Whole Foods 365 pickles" from Falkner Produce in Florida, (3) carries "liability insurance covering the ▮▮▮▮▮▮▮ jars of Whole Foods 365 pickles it has shipped to Florida," and (4) has "shipped ▮ ▮▮▮▮▮▮▮ containers of Whole Foods 365 pickles into Florida, and continues to make regular shipments to Florida." Am. Compl. ¶¶ 12(a)–(d). But none of these is a "tortious act [committed] within this state." Fla. Stat. § 48.193(1)(a)(2).

***Planning to Serve the Florida Market.*** "Planning" to serve the Florida market **from Patriot's New Jersey location**, Am. Compl. ¶ 12(a), is not conduct in Florida, much less tortious conduct in Florida. The alleged tortious conduct in this case is the alleged misappropriation of Grillo's trade secrets, which no one suggests occurred in Florida. *See supra* at 4. Moreover, the emails Grillo's relies on from 2022 to describe Patriot's alleged "plan" must be read in light of the actual Agreement entered into between Patriot and Whole Foods' supplier, UNFI, attached to the Amended Complaint as Exhibit E. That Agreement reflects that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] To the extent Grillo's attempts to claim that injury in Florida is sufficient to establish specific jurisdiction under § 48.193(1)(a)(2), such attempt fails. *White Wave Int'l Labs, Inc. v. Lohan*, No. 09-cv-1260, 2010 WL 3835873, at *4 (M.D. Fla. Sept. 29, 2010) (granting motion to dismiss for lack of personal jurisdiction where "Defendants' alleged misappropriation, which occurred outside of the state. . . . was not directed at Florida residents, corporations or property"); *accord Kirkland*, 2014 WL 260090, at *5 (holding indirect injury does not suffice for jurisdiction).

███████████████," in New Jersey and that ███████████████████████████████████"
upon UNFI picking up the Product, which flatly contradicts Grillo's allegations.  *Id.* at
PatSDFL0000844.  These facially contradictory exhibits fail to support Grillo's attempt to assert
jurisdiction, but they are easily understood in context.  In fact, Patriot and Whole Foods had
discussed two potential transaction structures: one in which Patriot would manufacture and
distribute pickles around the country and another one in which Patriot would sell pickles to UNFI
FOB Wayne, New Jersey.  As Exhibit E makes clear, the contract actually entered provided for
pickup by UNFI FOB Wayne, New Jersey.  Thus, any purported "plan" to ship Whole Foods 365
pickles to distribution centers in Florida and elsewhere remained inchoate and never resulted
in activity in Florida (tortious or otherwise).  Exhibit 1 (McEntee Decl.) ¶¶ 6–15.

    ***Sourcing Cucumbers from Florida.***  Grillo's claims Patriot's sourcing "directly relates to
the trade secret claims" because, "**upon information and belief**," Patriot "also used Falkner
Produce cucumbers to meet the specifications for cucumbers used in the Grillo's trade secret
recipes and processes."  Am. Compl. ¶ 12(b) (emphasis added).  But Grillo's does not allege that
sourcing the cucumbers from Falkner Produce was or is a part of Grillo's trade secret.  How could
it?  Grillo's cannot even allege with knowledge that Grillo's pickles were made using Falkner
cucumbers, instead relying on "information and belief."  *Id.*  But if Grillo's lacks knowledge about
where the cucumbers that went into its pickles were sourced, it cannot possibly claim that such
sourcing is **Grillo's** trade secret.  Pickles are made from cucumbers.  Buying cucumbers from
Florida is not tortious activity in Florida, and has nothing to do with the claims at issue in this case.

    ***Insuring Whole Foods 365 Pickles Shipped to Florida.***  There is nothing tortious about
buying insurance.  And in any event, Grillo's does not allege that Patriot purchased insurance in
Florida.  If anything, Grillo's allegations suggest that Patriot purchased insurance **in New Jersey**,
where Patriot "manufactures . . . [the] Whole Foods 365 pickles," Am. Compl. ¶ 10, and presumes
that such insurance would have covered the pickles anywhere they were shipped in the United
States.  But this presumption is contradicted by Grillo's exhibits, specifically the UNFI Agreement,
which expressly states that "██████████████████████████████████████████
████████████████████████████████."  Am. Compl., Ex. E at PatSDFL0000844.  Any
insurance obligations on Patriot's part thus ended in Wayne, New Jersey.

    ***Shipping Whole Foods 365 Pickles to Florida.***  Grillo's claim that Patriot has "shipped █
███████████ containers of Whole Foods 365 pickles into Florida, and continues to make

regular shipments to Florida" is based solely on Exhibits E–H to the Amended Complaint, which are purchase orders.  *See* Am. Compl. ¶ 12.  But these documents contradict this allegation on their face.  As shown in the Agreement and purchase orders relied upon by Grillo's, "███████████ ██████████████████████████████████," ████████████████████████████ ████████████████████████████████," and all pickles were offered for pickup FOB Wayne, New Jersey.  Am. Compl., Ex. E at PatSDFL0000844, Exs. F–H.  Because the plain text of exhibits relied on control over Grillo's allegations, this facially incorrect basis for jurisdiction cannot be considered by the Court.  *See Robey v. JPMorgan Chase Bank, N.A.*, 343 F. Supp. 3d 1304, 1319–20 (S.D. Fla. 2018) (relying on exhibit which facially contradicted complaint allegation to find that plaintiff failed to establish specific jurisdiction over defendant).  And in fact, <u>Patriot does not ship Whole Foods 365 Pickles to Florida, or anywhere for that matter</u>.  McEntee Decl. ¶ 12.  Consistent with what is reflected in the UNFI Agreement and purchase orders relied upon by Grillo's, Patriot offers for pickup the Whole Foods 365 pickles FOB to UNFI.  *Id.* ¶¶ 8–10.  UNFI picks up the pickles from Patriot's facility in Wayne, New Jersey, and, from there, Patriot has no control over the delivery of the pickles.  *Id.* ¶¶ 10–12.

Because Grillo's fails to allege that Patriot committed tortious conduct in Florida and Patriot did not in fact commit tortious conduct in Florida, Grillo's fails to satisfy the Florida long-arm statute.[4]  The Motion should be granted.

**B.  Exercising personal jurisdiction over Patriot would violate due process.**

Patriot also does not have the requisite minimum contacts with Florida to satisfy due process.  Courts employ a three-part test to determine whether the requirements of due process are met: whether the (1) "plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum," (2) "nonresident defendant 'purposefully availed' [itself] of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws," and (3) "exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *McCall v. Zotos*, No. 22-11725, 2023 WL 3946827, at *4 (11th Cir. June 12,

---

[4] No other basis exists for jurisdiction under Florida's long-arm statute.  Grillo's cannot rely on Section 48.193(1)(a)(6) because that section is satisfied only by personal injury or physical property damage.  *Bond v. Ivy Tech State Coll.*, 167 Fed. App'x 103, 105 (11th Cir. 2006).  Section 48.193(1)(a)(4) applies only to establish jurisdiction over an insurer to causes of action that arise from the insurance contract, and to property alleged to be located in Florida at the time of contracting.  *See Schumacher Grp. of Del., Inc. v. Dictan*, 327 So. 3d 404, 409 (Fla. 3d DCA 2021).  Section 48.193(1)(a)(1) is inapplicable because the Complaint alleges that Whole Foods, not Patriot, is the entity selling pickles in Florida.  Am. Compl. ¶ 13(c); *SANDP Sols., Inc.*, 2022 WL 7049243, at *6 (requiring defendant to conduct business activity for pecuniary benefit in Florida to assert jurisdiction under this prong).

2023).  "The plaintiff bears the burden of establishing the first two requirements" and, if met, the burden shifts to defendant on the third prong.  *Id.*

Grillo's fails to meet this burden.  With respect to the first prong, and as previously established, Grillo's claims arise out of alleged actions in New Jersey, **not Florida**.  *Supra* at 5–8.  Moreover, the Florida contacts alleged in support of jurisdiction have no relation to the claims at issue, which concern Patriot allegedly wrongfully "shar[ing] Grillo's trade secrets with Whole Foods" and "using Grillo's proprietary recipes and processes" to manufacture the Whole Foods 365 pickles.  Am. Compl. ¶¶ 37–38.  Allegedly planning to serve the Florida market, sourcing cucumbers from Florida, insuring pickles that end up in Florida, and shipping products to Florida have no relation to whether Grillo's improperly shared and used Grillo's trade secrets.

Further, Grillo's has failed to allege that Patriot has purposefully availed itself of Florida jurisdiction.  Grillo's harps on its claim that Patriot ships the Whole Foods 365 pickles to Florida, but these allegations are contradicted by Exhibits E–H. In fact, Patriot does not ship, sell, or market Whole Foods 365 pickles to or in Florida.  *See* McEntee Decl. ¶¶ 13–15.  Grillo's does not provide any other allegation supporting purposeful availment, such as allegations that Patriot is obligated to file taxes relating to the sale of Whole Foods 365 pickles in Florida or has real property, a bank account, or phone number in Florida.

The allegations of and exhibits to the Amended Complaint demonstrate that all of the conduct relevant to Grillo's claims occurred in New Jersey, and that exercising personal jurisdiction over Patriot in Florida would not comply with "traditional notions of fair play and substantial justice."  *Frontline Int'l, Inc. v. Edelcar, Inc.*, No. 10-cv-01351, 2011 WL 13209612, at *7 (M.D. Fla. Apr. 6, 2011) (finding that exercising jurisdiction over defendant alleged to misappropriate trade secrets would not comport with fair play and substantial justice where plaintiff failed to allege minimum contacts with Florida).  Florida is, at best, a forum far off and incidental to any allegation relevant to the claims.  Exercising jurisdiction here would mean any district with a Whole Foods is an appropriate forum, which is approximately 59 of the 89 districts in the United States.  *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (rejecting argument "sizable" sales suffice for personal jurisdiction because otherwise out-of-state defendants would be unable "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit").  The Court should thus grant Patriot's Motion to not violate the Due Process Clause of the Fourteenth Amendment.

## II.    VENUE IS NOT PROPER IN THIS DISTRICT.

Grillo's Amended Complaint suffers from a second fatal defect: venue.  At the motion to dismiss stage, "the plaintiff has the burden of showing that venue in the forum is proper."  *See Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).  Grillo's Amended Complaint alleges that venue is proper because "a substantial part of the events or omissions giving rise to [its] claims occurred" in this District.  Am. Compl. ¶ 13 (quoting 28 U.S.C. § 1391(b)(2)).  "Where a complaint contains multiple claims, 'venue must be established for each individual claim.'"  *BPI Sports, LLC v. PHD Fitness LLC*, No. 14-cv-60069, 2014 WL 11706458, at *2 (S.D. Fla. June 13, 2014).  "Only the events that directly give rise to a claim are relevant" for venue, and "of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered."  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).  "In conducting this analysis, 'the proper focus of the venue inquiry is on the relevant activities of the Defendants.'"  *Greiser v. Drinkard*, No. 17-cv-60975, 2017 WL 7788165, at *1 (S.D. Fla. Dec. 8, 2017).

### A.    The sale of Whole Foods 365 Pickles in this District does not establish proper venue.

Grillo's has not come close to alleging that "a *substantial part* of the events or omissions giving rise to the claim[s]" at issue here occurred within this District.  28 U.S.C. § 1391(b)(2) (emphasis added).  Grillo's continues to rely on just one argument for venue: Whole Foods 365 pickles are sold in this District.  Am. Compl. ¶ 13.  That is not enough for at least two reasons.

*First*, the fact that *Whole Foods* is selling its brand of pickles in this District is irrelevant to the venue analysis because "the proper focus of the venue inquiry is on the relevant activities of the *Defendants*."  *Greiser*, 2017 WL 7788165, at *1 (emphasis added).  Grillo's attempts to expand § 1391(b)(2) beyond its intended purpose by focusing on the actions of Whole Foods, not Patriot.  But the relevant alleged activities of Patriot that form the basis of Grillo's claims are the co-packing negotiations and subsequent agreement between Grillo's and Patriot, the alleged sharing of the recipe, and the production of Whole Foods 365 pickles, none of which Grillo's alleges occur in this District.  Grillo's admits that Patriot "manufactures, packages, [and] labels . . . Whole Foods 365 pickles from Patriot's facility in Wayne, New Jersey on behalf of Whole Foods."  Am. Compl. ¶ 10.  And the photos of the Whole Foods 365 pickles in the Amended Complaint clearly show that the products are "Distributed By: Whole Foods Market Austin, TX."  *Id.* ¶ 26.  In fact, as

discussed above, title, risk of loss, and control of Whole Foods 365 pickles passes to another company in *New Jersey*. That other company then transports the pickles from New Jersey to a warehouse in another District. *See id.* ¶ 12; McEntee Decl. ¶ 12. What Grillo's has not done is provide any allegations that a substantial part of the relevant activities *of Patriot* took place in this District. *Rodriguez v. Imperial Brands PLC*, No. 20-cv-23287, 2022 WL 18704831, at *5–6 (S.D. Fla. Nov. 2, 2022) (finding venue improper where "Plaintiffs [did] not allege that any of the Defendants undertook these alleged activities in the Southern District of Florida").

*Second*, Grillo's improperly tries to shift the focus of the venue analysis away from the core activity relating to the claims at issue and toward generic conduct that would justify venue in Districts all across the country. Grillo's admits that Whole Foods 365 pickles are "sold nationwide." Am. Compl. ¶ 30. Thus, if venue were based on where Whole Foods 365 pickles are sold, any district would seemingly qualify. The Amended Complaint's only attempt at a limiting principle is to suggest venue is proper in this District because it has "more Whole Foods stores than in the rest of Florida's federal judicial districts combined." *Id.* ¶ 13. But this would still mean venue would be proper in at least one district in every state that has a Whole Foods. More importantly, Grillo's attempt to rely on generic conduct like sales is contrary to the language of § 1391(b)(2), which "emphasizes the importance of the place where the wrong has been committed," and is designed only to permit venue "in two or more districts . . . in close cases" where substantial parts of the underlying events have occurred in several districts. *See Jenkins*, 321 F.3d at 1371. Grillo's focus on ancillary conduct would expand § 1391(b)(2) beyond its intended purpose, and therefore should be rejected.

**B.   A claim-by-claim analysis forecloses venue in this District.**

**1.** A substantial portion of the events giving rise to Grillo's trade secret claims (Counts I and II) did not occur in this District. Courts look to the following factors when determining whether venue is proper in the trade secret context: "1) the venue in which a party approached a company and gained access to proprietary information; 2) the place where a party's training, access to and knowledge of trade secrets, and job responsibilities were anchored, and 3) the location designated for litigation under the terms of a contract or the state's law which would apply under the terms of a contract." *AutoNation, Inc. v. Hall*, No. 19-cv-60291, 2019 WL 3712008, at *8 (S.D. Fla. May 29, 2019). Grillo's does not allege that *any* of these events took place in this District, even after conducting discovery, which alone is fatal to venue. *See TMJ Prac. Mgmt.*

*Assocs., Inc. v. Curran*, No. 16-cv-81903, 2017 WL 3130421, at *4 (S.D. Fla. July 24, 2017) (finding venue improper where "[n]one of the alleged actions taken by any defendant appear to have been initiated or taken in Florida, except for the allegation that Defendants' solicited clients of [Plaintiff] in Florida").

In addition, Grillo's allegations and discovery show that the key events took place in *other* Districts. For example, Grillo's alleges that Patriot misappropriated its trade secrets by disclosing those trade secrets to Whole Foods and by manufacturing pickles on behalf of Whole Foods. Am. Compl. ¶¶ 37–38, 48–49. But as discussed, the manufacturing of pickles on behalf of Whole Foods takes place *in New Jersey*, not this District. The same is true of the venue where Patriot allegedly would have "gained access to proprietary information," which would have been in New Jersey, where Patriot manufactures pickles for customers. *See id.* ¶ 10.

**2.** Similarly, none of the events giving rise to Grillo's breach of contract claim (Count III) are alleged to have occurred in Florida, and nothing in discovery showed otherwise. In *Jenkins*, the Eleventh Circuit held that the events giving rise to the plaintiff's breach of contract claim occurred in Georgia where the contract was executed in Georgia and was intended to be performed primarily in Georgia. 321 F.3d at 1372. And in *Managed Care Solutions, Inc. v. Community Health Systems, Inc.*, the court found venue was proper in the Southern District of Florida because plaintiff alleged that "the breach of contract occurred in this district . . . the contract was substantially performed here . . . [and] was partially negotiated in this district." No. 10-cv-60170, 2011 WL 6024572, at *3 (S.D. Fla. Dec. 2, 2011).

In contrast, Grillo's Amended Complaint contains no allegations that the NDA, the May 2015 Agreement, or the August 2016 Agreement were negotiated in Florida, executed in Florida, to be performed in Florida, or breached in Florida, in part or in whole. For instance, Grillo's alleges that Patriot breached these agreements by disclosing information to third parties, such as Whole Foods, and by failing to return Grillo's formulas and processes. Am. Compl. ¶¶ 54–55. However, Grillo's makes no allegation suggesting that these alleged breaches occurred in Florida. Since the Amended Complaint does not contain any allegations that Grillo's breach of contract claim arises out of events that occurred in Florida, venue is improper with respect to Count III.

## III.   ALTERNATIVELY, THE COURT SHOULD TRANSFER VENUE TO THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1404(a).

Alternatively, even if the Court either does not wish to decide whether it has venue or believes venue proper, it should still transfer the case pursuant to 28 U.S.C. § 1404(a), because

this action would be better heard in the District of New Jersey for the following reasons: Patriot is located in New Jersey, the key facility that produces the pickles at issue is located in New Jersey, a majority of the witnesses and key documents will be in New Jersey, and Grillo's is located in Massachusetts.[5]  For all these reasons, the financial strain on the parties would be much greater in this District, while the proceedings would be more efficient in the District of New Jersey. Moreover, Grillo's has already filed an action in the District of New Jersey with overlapping parties and issues, so the first-filed rule supports transfer, too.

> **A.**      **Standard for a motion to transfer venue under § 1404(a).**

Section 1404(a) permits a district court to, "in the interest of justice" and "[f]or the convenience of parties and witnesses," "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A court may transfer venue under § 1404(a) even if it finds venue would be proper in the district where the case is brought.  *E.g.*, *Allied Marine, LLC v. S2 Yachts, Inc.*, No. 09-cv-21329, 2009 WL 10698780, at *2 (S. D. Fla. Sept. 2, 2009).  On a motion to transfer, a court must weigh:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  The § 1404(a) factors are "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

> **B.**      **The § 1404(a) factors weigh heavily in favor of transfer.**

Applying the § 1404(a) factors to this case reveals that they overwhelmingly support a transfer to the District of New Jersey.  New Jersey would be far more convenient for witnesses given most are located in New Jersey or otherwise in the Northeast.  The same is true of the relevant documents and products at issue, which will generally be located in or around Patriot's New Jersey facility.  New Jersey would also be a more convenient location for the parties—Patriot is located

---

[5] The Court may dismiss or transfer a case due to venue issues without deciding whether it has personal jurisdiction over the defendant.  *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

in New Jersey. And Grillo's is located in Massachusetts, so it would be a much shorter flight and far more accessible by car or train. The locus of operative facts (*e.g.*, the former co-packing arrangement between Grillo's and Patriot and the current co-packing relationship between Patriot and Whole Foods) occurred in New Jersey. Given that most witnesses are located in New Jersey or the Northeast, it would be easier to compel process in New Jersey because more witnesses would be located in the district. *See* Am. Compl. ¶ 10 (noting that Patriot's principal place of business is in Wayne, New Jersey). The financial strain would likely be less for both parties (especially Patriot) given their location. There is no reason to believe that the District of New Jersey would be less familiar in applying federal trade secret law or that Grillo's could not amend its Amended Complaint to assert similar state law claims—and given the location of the co-packing arrangement between Patriot and Grillo's, there is a good chance New Jersey law applies to some issues. While Grillo's choice of forum is entitled to weight, Grillo's is entitled to less deference on its selected forum than the average litigant because it is not domiciled in Florida and does not otherwise allege any connection to Florida. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981) (affording less deference to the choice of forum by foreign plaintiffs). Accordingly, trial efficiency, fairness and convenience for the parties, and the interest of justice require this Court to transfer this action to the District of New Jersey.

The appropriateness of Patriot's venue transfer request is further illustrated by a case in this District with similar facts that granted a § 1404(a) transfer motion. In *Corioliss, Ltd. v. Corioliss USA, Inc.*, this Court granted a motion to transfer the action to the Northern District of Georgia where the defendant allegedly used the plaintiff's proprietary designs to produce and sell competing hairstyling products in violation of a non-disclosure agreement. No. 08-cv-21579, 2008 WL 4272746, at *3 (S.D. Fla., Sept. 17, 2008). This Court considered six of the factors, finding: the defendants, majority of witnesses, relevant documents, and products at issue were all in Georgia; the locus of operative facts occurred in Georgia, notwithstanding that the products at issue were sold throughout Florida; the financial strain would not be significantly greater on the plaintiffs since they were foreign corporations and the defendants resided in Georgia; and a Georgia forum would be just as familiar with plaintiffs' federal cause of action and the plaintiffs could amend their complaint to assert similar Georgia state law claims. *Id.* at *2–3. The Court also considered the amount of deference afforded to plaintiffs' choice of forum and found that, as foreign citizens, less deference was afforded to the forum selected. *Id.* at *3. Finally, the Court

concluded, for the reasons already stated, that the action should be transferred "to ensure the most efficient trial and that the interests of justice will be satisfied." *Id.* The same reasoning applies here, and so this Court should follow *Corioliss* and grant Patriot's motion to transfer.

### C.   The first-filed rule also supports transfer to New Jersey.

In addition, the first-filed rule and Grillo's earlier lawsuit against Patriot in New Jersey support transfer. "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. American Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). "A first-filed analysis looks to the character of the suits and the parties to the suits, not simply to the similarity of issues . . ." *Id.* at 79. The first-filed action here is *Grillo's I*, filed in the District of New Jersey. *Grillo's I* and the present action involve the same parties, Grillo's and Patriot, and involve similar claims by Grillo's against Patriot regarding Patriot's pickle products. And although *Grillo's I* does not involve trade secret misappropriation claims, Grillo's nonetheless included factual allegations suggesting trade secret misappropriation, alleging that "(1) Patriot had full knowledge of Grillo's recipes and (2) Defendants used this knowledge to formulate Wahlburgers pickles recipes to be nearly identical to Grillo's." NJ Am. Compl. ¶ 36. These allegations in *Grillo's I* mirror the allegations in this case, where Grillo's alleges that "Patriot was entrusted with Grillo's trade secrets," Am. Compl. ¶ 33, and that one of Patriot's products "look and taste incredibly similar to Grillo's," *id.* ¶ 26. Since both this case and *Grillo's I* involve the same parties and will involve overlapping factual discovery as to Patriot's access to Grillo's alleged trade secrets by virtue of their co-packing relationship, this case should be transferred to the first-filed venue, the District of New Jersey.

## IV.   GRILLO'S AMENDED COMPLAINT IS A SHOTGUN PLEADING.

Grillo's Amended Complaint should be dismissed because it violates Rule 8(a)(2)'s prohibition on shotgun pleading by "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). Here, Grillo's Amended Complaint commits this "mortal sin," *Weiland*, 792 F.3d at 1322, because it incorporates the allegations of all preceding Counts in each successive Count, *see* Am. Compl. ¶¶ 42, 52. As such, it fails to give Patriot "adequate notice of the claims against" it and should be dismissed pursuant to the district court's

"inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) . . . ." *Weiland*, 792 F.3d at 1320, 1323.

## V.    GRILLO'S AMENDED COMPLAINT FAILS TO STATE A CLAIM.

### A.    Grillo's fails plausibly to allege a trade secret misappropriation claim.

Grillo's trade secret misappropriation claims do not plausibly allege that Patriot misappropriated Grillo's trade secrets for three reasons.  First, the factual basis for Grillo's trade secret misappropriation claims are that Patriot uses the same ingredients and has similar nutritional information.  However, as shown in the Amended Complaint, this information is publicly available as it is found on Grillo's labels and is not entitled to trade secret protection.  Second, Grillo's does not suggest that its ingredients are in any way unique or not known in the industry.  The basic ingredients for a pickle—cucumbers, salt, vinegar, and water—cannot constitute a trade secret, nor can everyday spices such as garlic, dill, or grape leaf.   Finally, Grillo's allegations fall short of the plausibility standard because its Amended Complaint shows that the sodium content for all of its products is markedly different from Whole Foods 365 pickles.  Given these deficiencies, the Court should dismiss Grillo's trade secret misappropriation claims.

#### 1.    Pleading standard for a trade secret misappropriation claim.

In order for a claim to survive a Rule 12(b)(6) Motion to Dismiss, the claim must have been pleaded with enough facts to state a claim for relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Under the federal DTSA, a plaintiff must show, "that it (i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy." *Measured Wealth Private Client Group, LLC v. Foster*, No. 20-cv-80148, 2020 WL 3963716, at *3 (S.D. Fla. July 13, 2020).  Courts generally apply the same standard for claims brought under the DTSA and the FUTSA.  *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1311 n.13 (11th Cir. 2020) (noting that the definition for "trade secret" under the FUTSA and DTSA "[are] substantially equivalent").

#### 2.    Grillo's trade secret misappropriation claims are based on generally known or readily ascertainable information.

One issue with Grillo's trade secret misappropriation claims is that Grillo's fails to plausibly allege that Patriot misappropriated its "trade secrets" in manufacturing the Whole Foods

365 pickles.  The definition of a trade secret provides that it "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." Fla. Stat. § 688.002(4); *see also* 18 U.S.C. § 1839(3)(B).  Thus, "[i]nformation that is generally known or readily accessible to third parties cannot qualify for trade secret protection." *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998).

Grillo's identifies its supposed trade secrets as relating to its "recipes and processes . . . including the ratios and amounts of each ingredient used to manufacture each type of pickle and the types of and specifications for the ingredients used to make each type of pickle." Am. Compl. ¶ 15.  However, Grillo's basis for its claims of trade secret misappropriation are its factual allegations that the pickles "look and taste incredibly similar" and "bear virtually identical nutritional information and are made from precisely the same ingredients." *Id.* ¶ 26.  Grillo's also alleges that testing of the two pickles showed they had a "nearly identical profile" and that when Whole Foods began using Patriot as a manufacturer, the Whole Foods 365 pickles "became virtually identical to Grillo's pickles." *Id.* ¶¶ 27–28.  But all of these allegations show only that the Whole Foods 365 pickles and Grillo's use the same ingredients and have similar packaging, "[i]nformation that is generally known or readily accessible to third parties." *Am. Red Cross*, 143 F.3d at 1410.  For example, Grillo's Amended Complaint fails to allege that Whole Foods 365 pickles incorporate information that may not be publicly available, such as its "ratios and amounts of each ingredient" or manufacturing processes.  Since Grillo's does not plead any facts suggesting that Patriot used anything but public information, its claims should be dismissed.

### 3.     Grillo's ingredients are not unique.

Grillo's also fails to state a claim for trade secret misappropriation because it does not allege that its ingredients, or the combination of those ingredients, are in any way "unique." "[I]nformation that is commonly known in the industry and not *unique* to the allegedly injured party is not confidential and is not entitled to protection." *Loans of Am. FL, LLC v. Rapid Auto Loans, LLC*, No. 10-cv-60416, 2010 WL 2754336, at *3 (S.D. Fla. July 12, 2010) (emphasis added); *see also Keystone Plastics, Inc. v. C & P Plastics, Inc.*, 340 F. Supp. 55, 74 (S.D. Fla. 1972) (trade secrets must "possess at least that modicum of originality which will separate it from everyday knowledge").  It is no secret that pickles all require the basic ingredients of cucumbers, water, vinegar, and salt. *See, e.g.*, Am. Compl. ¶ 26.  And to the extent that Grillo's claims that

ingredients are added for flavoring, such as the garlic, dill, or grape leaves, it is entirely implausible to believe that such everyday ingredients are secret or unique.  Patriot, a commercial manufacturer with experience producing a variety of pickles, could obviously create a product similar to Grillo's based on the common ingredients found on its label.  Accordingly, Grillo's does not plausibly allege that the ingredients in its products are not "commonly known in the industry" or "unique" and thus "entitled to protection."  *Loans of Am. FL, LLC*, 2010 WL 2754336, at *3.

> ### 4. Grillo's trade secret misappropriation claims are contradicted by the information on the nutritional labels.

Another deficiency in Grillo's trade secret misappropriation allegations is that they are contradicted by the images of the nutritional labels included in the Amended Complaint.  To plead a trade secret misappropriation claim, Grillo's must plausibly allege that "the defendant used and/or disclosed [plaintiff's trade secrets]."  *Measured Wealth Private Client Group, LLC*, 2020 WL 3963716, at *3 .  But all of the Whole Foods 365 products are listed as having a sodium content of "180mg."  In contrast, Grillo's products are listed as having a sodium content of either "200mg," "210mg," or "250mg."  Thus, despite Grillo's allegations that the products are "virtually identical," Am. Compl. ¶ 26, the actual facts alleged—i.e., the sodium content of the two products—shows they are not "virtually identical."  Instead, the sodium differs by roughly 10% to 30% depending on the type of pickle, a material amount.  Given this, Grillo's has not alleged sufficient facts to support the proposition that Patriot used any of Grillo's purported trade secrets, such as the "ratios and amounts of each ingredient."  Rather, the notable differences in the nutritional information of the two products means that Grillo's allegations of trade secret misappropriation fail to meet the *Twombly*/*Iqbal* plausibility standard.

> ### B. Grillo's breach of contract claims fail as a matter of law.

In addition to failing to plausibly allege trade secret misappropriation claims, Grillo's breach of contract claims likewise do not withstand the Rule 12(b)(6) standard for two reasons.[6] First, the NDA, which the parties signed in January 2012, has explicit language that it is effective for only five years.  And second, Grillo's Pickles, Inc., the plaintiff in this case, is not a party to the contracts and Grillo's does not allege facts that it is entitled to enforce such contracts.

---

[6] Because Patriot's arguments rely on basic principles of contract law, which State's law applies should not affect the analysis of these arguments.  However, New Jersey law likely governs Grillo's breach of contract claim.  *See Stone v. CompuServe Interactive Servs., Inc.*, 804 So. 2d 383, 389 (Fla. 4th DCA 2001).

1.     **The NDA is no longer effective.**

A notable flaw in Grillo's Amended Complaint is that it alleges that, for the NDA, (1) "the term of this agreement is five (5) years" but (2) it would "remain in full force and effect until such time as [Grillo's and Patriot] mutually agree to terminate it." Am. Compl. ¶ 18. Under the first clause then, the term of the NDA is five years and would have terminated in 2017. Notwithstanding that the term of the NDA has expired, Grillo's suggests that the agreement is effectively indefinite under the second clause. However, if the court accepts Grillo's position, then that would render the five-year term clause meaningless. *Cumberland Cnty. Improvement Auth. v. GSP Recycling Co.*, 818 A.2d 431, 438 (N.J. Super. Ct. App. Div. 2003) (noting that a contract "should not be interpreted to render one of its terms meaningless"). Instead, the court should apply contract interpretation principles and give both clauses meaning.

The full clause in the NDA reads "This Agreement shall survive any termination of the discussion with respect to the subject and shall continue in full force and effect until such time as Parties mutually agree to terminate it." Am. Compl., Ex. I ¶ 7. This clause does not imply that particular provisions survive termination of the NDA. Rather, it implies that in the event that the parties terminate discussion of its subject (i.e., the sharing of proprietary information), the NDA nonetheless remains effective unless the parties agree to mutually terminate it, at least until the five-year term ends. And while the language "shall continue in force and effect until such time as Parties mutually agree to terminate it" could be read as placing an indefinite term on the agreement, the explicit language that the term of the agreement is five years forecloses this reading. Accordingly, the only way to read the NDA without rendering any language meaningless is that the agreement will remain in effect until the earlier of (1) the parties mutual agreement to terminate or (2) five years from the effective date. As there is no allegation that Grillo's or Patriot mutually agreed to terminate the NDA, the agreement would have terminated in January 2017. This reading is further supported by another principle of contract interpretation that "[s]pecific language in a contract controls over general language, and where specific and general provisions conflict, the specific provision ordinarily qualifies the meaning of the general one." *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 372 (S.D.N.Y. 2022). As the five-year term provision is the more specific provision with regard to the duration of the NDA, it qualifies the provision that the NDA is effective until the parties' mutual agreement to terminate. Thus, Patriot could not be liable for breach of the NDA based on actions allegedly taken six years after the agreement terminated.

Because a threshold issue in evaluating a breach of contract claim is whether the plaintiff has an enforceable contract, the Court should dismiss Grillo's breach of contract claims here based on the NDA because such agreement is no longer effective.  *See Ins. Co. of State of Pa. v. Don Siegel Constr., Inc.*, 2006 WL 1667175, at *2 (N.J. Super. Ct. App. Div. June 19, 2006) ("[I]n considering plaintiff's claim of [defendant's] breach of contract, the judge was first obligated to determine whether the parties had entered into an enforceable contract.").

### 2.     Grillo's Pickles, Inc. is not a party to the agreements.

Second, Grillo's breach of contract claims also fail as a matter of law because the Amended Complaint does not establish that the plaintiff in this case, Grillo's Pickles, Inc., was a party to the NDA, the May 2015 Agreement, and the August 2016 Agreement, which were entered into between Patriot Pickle, Inc. and Grillo's Pickles, LLC.  It is blackletter law that, to prevail on a breach of a contract claim, the plaintiff must establish that "the *parties* entered into a contract containing certain terms."  *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (emphasis added). Thus, based on the Amended Complaint and attached Exhibits, it does not appear that Grillo's Pickles, Inc. is a party to the contracts for which Grillo's alleges breach.  Since the facts in the Amended Complaint do not establish that the plaintiff, Grillo's Pickles, Inc., was a party to any of the agreements, its breach of contract claims must fail as a matter of law.

### CONCLUSION

The Court should grant Patriot's motion to dismiss for lack of personal jurisdiction or for improper venue.  In the alternative, the Court should transfer this action to the District of New Jersey.  Finally, even if the Court finds jurisdiction and venue proper, it should grant Patriot's motion to dismiss for failure to state a claim under Rule 12(b)(6).

### LOCAL RULE 7.1(a)(3) CERTIFICATION

I HEREBY CERTIFY that undersigned counsel has conferred, through e-mail communications, with counsel for Grillo's in a good faith effort to resolve the issues raised in this motion and Grillo's opposes the relief sought herein, thus the parties were unable to resolve the issues.

Date:  September 7, 2023                    Respectfully submitted,

                                           */s/ Eliot Pedrosa*

                                           Eliot Pedrosa, Esq.
                                           Fla. Bar No. 182443
                                           Email: epedrosa@jonesday.com
                                           Angela Korge, Esq.
                                           Fla. Bar No. 125419
                                           Email: akorge@jonesday.com
                                           Jones Day
                                           600 Brickell Ave, Suite 3300
                                           Miami, FL 33131
                                           Telephone: (305) 714-9700
                                           Facsimile: (305) 713-9799

                                           Harold K. Gordon, Esq. (*Pro Hac Vice*)
                                           Fla. Bar No. 0088641
                                           Email: hkgordon@jonesday.com
                                           Jennifer L. Del Medico, Esq. (*Pro Hac Vice*)
                                           Email: jdelmedico@jonesday.com
                                           Jones Day
                                           250 Vesey St
                                           New York, NY 10281
                                           Telephone: (212) 326-3939

                                           *Counsel for Defendant Patriot Pickle, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7th day of September, 2023, I electronically filed a true and correct copy of the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all parties at the email addresses on file with the Clerk of Court.

*/s/ Eliot Pedrosa*
_____

Eliot Pedrosa