UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-22387-BLOOM/OTAZO-REYES

GRILLO'S PICKLES, INC.,

     Plaintiff,

v.

PATRIOT PICKLE, INC.,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Patriot Pickle, Inc.'s ("Defendant" or "Patriot") Motion to Dismiss the Amended Complaint or, in the Alternative, to Transfer Venue and Incorporated Memorandum of Law (hereafter, "Motion to Dismiss or Transfer") [D.E. 42]. This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Beth Bloom, United States District Judge [D.E. 48]. The undersigned held a hearing on this matter on October 4, 2023 (hereafter, "Hearing"). For the reasons stated below, the undersigned respectfully recommends that Defendant's Motion to Dismiss or Transfer be GRANTED IN PART and that this case be TRANSFERRED to the District of New Jersey.

## PROCEDURAL AND FACTUAL BACKGROUND

On June 27, 2023, Plaintiff Grillo's Pickles, Inc. ("Plaintiff" or "Grillo's"), a pickle manufacturer incorporated in Delaware with its principal place of business in Massachusetts, commenced this action against Patriot, another pickle manufacturer also incorporated in Delaware with its principal place of business in New Jersey, asserting claims for misappropriation of trade secrets and breach of contract arising from the parties' prior co-packing relationship. See Compl.

[D.E. 1].  Grillo's alleges that Patriot "is violating its agreements with Grillo's by using Grillo's proprietary recipes and processes to produce a new line of pickles under the Whole Foods 365 label . . . [which] threatens to cripple Grillo's business and customer base irreparably."  Id. ¶¶ 5–6.  Grillo's seeks "to enjoin Patriot from its continued actual and threatened misappropriation of Grillo's proprietary recipes and processes"; requests the entry of "preliminary and permanent injunctive relief prohibiting Patriot from further breaches of [the parties'] agreements"; and seeks to recover monetary damages, interest, costs, attorney's fees, and punitive damages, if appropriate. Id. ¶¶ 40, 50, 58–59.

On June 30, 2023, Grillo's filed its Motion for a Preliminary Injunction and Incorporated Memorandum of Law (hereafter, "Motion for Preliminary Injunction") [D.E. 9], wherein it seeks an order: "[e]njoining and restraining Patriot . . . from using Grillo's trade secret recipes and processes . . . specifically, the ratios and amounts of each ingredient used to manufacture each type of pickle and the types of and specifications for the ingredients used to make each type of pickle (hereinafter, Grillo's 'Recipes and Processes')"; "[e]njoining and restraining Patriot from possessing or accessing . . . Grillo's trade secret Recipes and Processes"; "[o]rdering Patriot to remove from the market any pickles that were manufactured using any of Grillo's trade secret Recipes and Processes"; and "[o]rdering Patriot to return all material containing or based on Grillo's trade secret Recipes and Processes".  See Motion for Preliminary Injunction [D.E. 9 at 15–16].

On July 11, 2023, Grillo's filed an *Ex Parte* and Expedited Motion (1) for Expedited Discovery and (2) to Modify the Briefing Schedule Regarding Plaintiff's Motion for Preliminary Injunction (hereafter, "Motion for Expedited Discovery and Briefing Schedule") [D.E. 18], requesting that the Court "permit Grillo's immediately to engage in limited expedited discovery

regarding the issues central to Grillo's pending [Motion for Preliminary Injunction]." <u>See</u> Motion for Expedited Discovery and Briefing Schedule [D.E. 18 at 1].  On July 14, 2023, Patriot filed a Memorandum in Opposition to Plaintiff's Motion for Expedited Discovery and Briefing Schedule and Cross-Motion to Stay Discovery and Briefing Relating to Plaintiff's Motion for Preliminary Injunction (hereafter, "Cross-Motion to Stay Discovery and Briefing Schedule") [D.E. 22]; as well as a Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer Venue and Incorporated Memorandum of Law (hereafter, "Motion to Dismiss the Complaint") [D.E. 23].[1]

On July 18, 2023, the undersigned held a hearing on Grillo's Motion for Expedited Discovery and Briefing Schedule and Patriot's Cross-Motion to Stay Discovery and Briefing Schedule.  <u>See</u> Paperless Minute Entry [D.E. 32].  In light of Patriot's Motion to Dismiss the Complaint, where it argued, in part, that the Complaint should be dismissed for lack of personal jurisdiction or for improper venue, the undersigned permitted Grillo's to conduct limited jurisdictional discovery "relevant to the issues of the court's assertion of personal jurisdiction over Defendant and the propriety of venue in this district" and to file "an amended complaint setting forth additional personal jurisdiction and venue allegations".  <u>See</u> Order [D.E. 33 at 2].  The undersigned also prescribed a time for Patriot to respond to Grillo's amended pleading.  <u>Id.</u>[2]

On August 18, 2023, after the close of jurisdictional discovery, Grillo's timely filed its Amended Complaint [D.E. 36], thereby mooting Patriot's Motion to Dismiss the Complaint.  <u>See</u> Paperless Order [D.E. 47].  The Amended Complaint reasserts Grillo's claims for misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA") and the federal Defend

---

[1] The Motion for Preliminary Injunction [D.E. 9], Motion for Expedited Discovery and Briefing Schedule [D.E. 18], and Motion to Dismiss the Complaint [D.E. 23] were also referred to the undersigned [D.E. 19, 29].

[2] As a result, the undersigned held in abeyance "Plaintiff's request for expedited merits discovery and briefing schedule with respect to its pending Motion for Preliminary Injunction and Defendant's competing request for a stay of merits discovery and briefing schedule".  <u>See</u> Order [D.E. 33 at 2].

Trade Secrets Act ("DTSA") (Counts I and II); and for breach of contract (Count III).  See Am. Compl. [D.E. 36 (redacted)].[3]  On September 7, 2023, Patriot timely filed its Motion to Dismiss or Transfer [D.E. 42], arguing that:

> ➢ The Amended Complaint does not satisfy the Florida long-arm statute and exercising personal jurisdiction over Patriot would violate due process, thereby warranting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) (hereafter, "Rule 12(b)(2)");

> ➢ Venue is not proper in this district, thereby warranting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3) (hereafter, "Rule 12(b)(3)") or, alternatively, the Court should transfer venue to the District of New Jersey pursuant to 28 U.S.C. § 1404(a) (hereafter, "Section 1404(a)");

> ➢ The Amended Complaint is a shotgun pleading that violates the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2) (hereafter, "Rule 8(a)(2)"); and

> ➢ The Amended Complaint fails to state claims for trade secret misappropriation and breach of contract, thereby warranting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) (hereafter "Rule 12(b)(6)").

See Motion to Dismiss or Transfer [D.E. 42 (redacted)].[4]  In support of its Motion to Dismiss or Transfer, Patriot proffered the declaration of its President and CEO, Bill McEntee ("Mr. McEntee") (hereafter, "McEntee Declaration") [D.E. 42-1].

On September 21, 2023, Grillo's filed its Memorandum of Law in Support of its Opposition to Defendant's Motion to Dismiss or Transfer (hereafter, "Response") [D.E. 51 (redacted)]; and on September 28, 2023, Patriot filed its Reply in Support of its Motion to Dismiss or Transfer (hereafter, "Reply") [D.E. 58].[5]

## APPLICABLE LAW

### 1. *Personal jurisdiction*

Rule 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  Fed. R. Civ. P.

---

[3] Grillo's also filed an unredacted version of the Amended Complaint [D.E. 46, filed under seal].
[4] Patriot also filed an unredacted version of the Motion to Dismiss or Transfer [D.E. 54, filed under seal].
[5] Grillo's also filed an unredacted version of its Response [D.E. 57-1, filed under seal].

12(b)(2).  Initially, the plaintiff must plead sufficient facts to establish a prima facie case in order to withstand such a motion to dismiss.  Virgin Health Corp. v. Virgin Enters. Ltd., 393 F. App'x 623, 625 (11th Cir. 2010).  If the defendant produces affidavits or other evidence that contradicts the plaintiff's prima facie case, the plaintiff must then offer affidavits or other competent proof and not just restate the facts in the complaint.  Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000).  All reasonable inferences should be construed in favor of the non-movant plaintiff.  PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 810 (11th Cir. 2010).

A two-part test is applied to determine whether a court has personal jurisdiction over a nonresident defendant.  Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 855 (11th Cir. 1990).  First, the court must consider whether the applicable state long-arm statute permits exercising personal jurisdiction over the defendant.  Id.  Florida's long-arm statute extends specific personal jurisdiction over nonresidents "[c]ommitting a tortious act within this state."  Fla. Stat. § 48.193(1)(a)(2) (hereafter, "Section 48.193(1)(a)(2)").  "Florida's long-arm statute is to be strictly construed."  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996).

Once the state's long-arm statute is met, the court must then determine if there are sufficient "minimum contacts" to satisfy the Due Process Clause of the Fourteenth Amendment.  Cable/Home, 902 F.2d at 855; Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  So long as the actor's efforts are "purposefully directed" to citizens of another state, physical presence is not necessary to establish "minimum contacts."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).  Nevertheless, the contacts with the forum state must not be merely "fortuitous" or "random."  Id. at 475.

### 2. *Venue*

Venue is generally governed by 28 U.S.C. § 1391(b) (hereafter, "Section 1391(b)"), which provides that a civil action may be brought in:

(1)     a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)     if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §§ 1391(b)(1)–(3).

Rule 12(b)(3) authorizes a party to move to dismiss a case for improper venue. Fed. R. Civ. P. 12(b)(3). A party may also move to transfer venue pursuant to Section 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The standard for transfer under [Section] 1404(a) leaves much to the broad discretion of the trial court". Osgood v. Discount Auto Parts, LLC, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013) (citation omitted). "The burden is ultimately on the party moving for transfer to establish that another district is a more convenient forum than the plaintiff's chosen forum." Id. (citations omitted).

### 3. *Shotgun pleading*

Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2). "Complaints that violate [] Rule 8(a)(2) . . . are often disparagingly referred to as 'shotgun pleadings.'" Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir.

2015).  "The unifying characteristic of all types of shotgun pleadings is that they fail [in] one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  Id. at 1323.  "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings."  Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) (citations omitted).  "A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds."  Id. (quoting Weiland, 792 F.3d at 1320).

### 4.  *Failure to state a claim*

"To survive a motion to dismiss brought pursuant to [Rule 12(b)(6)], a claim must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, meaning that it must contain factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Alexander v. Medley, No. 21-cv-24386, 2022 WL 1102856, at *2 (S.D. Fla. Apr. 12, 2022) (quotation marks omitted) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "The Court must accept the plaintiff's allegations as true and construe them in the light most favorable to the [p]laintiff"; however, "a Court need not take allegations as true if they are merely 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'"  VSI Sales, LLC v. DiSimone, No. 20-61119-CIV, 2021 WL 8972144, at *2 (S.D. Fla. Apr. 13, 2021) (citations omitted).

### SUMMARY OF PATRIOT'S ARGUMENTS

As noted above, Patriot argues that the Amended Complaint should be dismissed for lack of personal jurisdiction and improper venue, as well as for failure to adhere to the pleading standards set forth in Rule 8(a)(2) and to state claims for trade secret misappropriation and breach

of contract.  Regarding venue, Patriot argues in the alternative that the Court should transfer the case to the District of New Jersey pursuant to Section 1404(a).  The undersigned addresses Patriot's arguments as to personal jurisdiction, venue, Rule 8(a)(2), and failure to state a claim in turn.

## PERSONAL JURISDICTION

Patriot argues that the Amended Complaint fails to satisfy the Florida long-arm statute; and that exercising personal jurisdiction over Patriot in Florida would violate due process.  See Motion to Dismiss or Transfer [D.E. 42 at 12–16].  As more fully discussed below, the undersigned concludes that this Court lacks personal jurisdiction over Patriot.

### 1.  Jurisdiction over Patriot pursuant to Section 48.193(1)(a)(2)

Patriot argues that, to the extent that Grillo's claims that specific personal jurisdiction is proper in Florida under Section 48.193(1)(a)(2), "no jurisdiction exists under that section."  See Motion to Dismiss or Transfer [D.E. 42 at 12].[6]  As noted above, Section 48.193(1)(a)(2) extends specific personal jurisdiction over nonresidents "[c]ommitting a tortious act within this state."  Fla. Stat. § 48.193(1)(a)(2).  According to Patriot, Grillo's "attempts to hang its jurisdictional hopes" on certain "ancillary contacts" that Patriot has with Florida, namely: that Patriot planned to serve the Florida market with Whole Foods 365 pickles; that Patriot sourced the cucumbers used to produce Whole Foods 365 pickles from non-party Falkner Produce, a Florida company; that Patriot carries liability insurance covering its pickle shipments to Florida; and that Patriot continues to ship containers of Whole Foods 365 pickles into Florida.  See Motion to Dismiss or Transfer [D.E.

---

[6] As a threshold matter, Patriot contends that the "Amended Complaint fails to allege which section of the Florida long-arm statute purportedly applies and therefore should be dismissed on this basis alone", arguing that the Amended Complaint only "baldly asserts that its allegations 'satisfy the requirements of Fla. Stat. § 48.193.'"  See Motion to Dismiss or Transfer [D.E. 42 at 12] (quoting Am. Compl. [D.E. 36 ¶ 14]).  However, rather than taking such a summary approach, the undersigned proceeds to consider whether the Amended Complaint alleges sufficient facts to support the exercise of specific personal jurisdiction over Patriot pursuant to Section 48.193(1)(a)(2).

42 at 13–15] (citing Am. Compl. [D.E. 36 ¶ 12]).[7]  Patriot contends that none of these contacts constitute the commission of tortious acts in Florida for purposes of specific personal jurisdiction.

Grillo's counters that Patriot "misses the mark because it fails to address bedrock Florida law: [a]lthough the long-arm statute requires a tortious act be committed in Florida, Patriot does not have to be physically present in Florida for the tortious act to occur within Florida."  See Response [D.E. 51 at 9] (citing Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla. 2002)).  Grillo's posits that, although Patriot's manufacturing facility is in New Jersey, it has committed tortious acts in Florida by "knowingly and consistently fulfill[ing] purchase orders from Florida with pickles made using Grillo's trade secret recipes and processes and [sending] . . . pickles made with Grillo's trade secrets into Florida", to be "sold beside Grillo's pickles in one of Grillo's largest retailers throughout the state", namely, Whole Foods.  See Response [D.E. 51 at 9].  Grillo's further argues that "the long-arm statute is also satisfied if a plaintiff demonstrates a defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing the activities in Florida were 'essential to the success of the tort.'"  Id. (citing Cable/Home, 902 F.2d at 857).  In Grillo's view, sourcing cucumbers from Florida is "essential to the success of Patriot's trade secret misappropriation" and also satisfies Section 48.193(1)(a)(2).  See Response [D.E. 51 at 10] (quotation marks and citation omitted).[8]

---

[7] Because paragraph 12 of the Amended Complaint is heavily redacted, see Am. Compl. [D.E. 36 ¶ 12], any references herein to its contents is taken from the parties' briefs on the Motion to Dismiss or Transfer as they appear on the public docket [D.E. 42, 51, 58].

[8] At the Hearing, Grillo's proffered the same theory of specific personal jurisdiction for its breach of contract claim.  Given that Grillo's predicates its breach of contract claim on the same jurisdiction-generating event, that is, trade secret misappropriation, the analysis with respect to Section 48.193(1)(a)(2) extends to Grillo's breach of contract claim.  See Sexual MD Sols., LLC v. Wolff, No. 20-20824-CIV, 2020 WL 2197868, at *12 (S.D. Fla. May 6, 2020) ("If the forum's long-arm statute provides jurisdiction over one claim, the district court has personal jurisdiction over the entire case so long as the claims arose from the same jurisdiction-generating event.") (internal quotation marks omitted) (quoting Thomas v. Brown, 504 F. App'x 845, 847 (11th Cir. 2013)).

Grillo's properly notes that Section 48.193(1)(a)(2) "extends to defendants who committed their tortious acts outside the state if their acts 'cause injury in Florida.'" Frida Kahlo Corp. v. Pinedo, No. 18-21826-Civ, 2021 WL 4147876, at *3 (S.D. Fla. Sept. 13, 2021) (quoting Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1216 (11th Cir. 1999)).  However, even if Patriot's product development, shipment, insurance, and business activities were deemed to constitute tortious acts on the part of Patriot, as Grillo's contends, see Response [D.E. 51 at 8] (citing Am. Compl. [D.E. 36 ¶ 12]), Grillo's fails to allege how this alleged conduct has injured Grillo's, a resident of Massachusetts, in this forum.  See Macrotrend Cap. Grp. Inc. v. Edwards, No. 18-cv-61327, 2019 WL 2106421, at *4 (S.D. Fla. Mar. 4, 2019) ("[T]he place of injury must be within Florida.") (internal quotation marks and citation omitted).  Moreover, for a trade secret misappropriation claim, the situs of the injury for purposes of jurisdiction "has generally been held to be the state where the [trade secret] owner resides."  Geodetic Servs., Inc. v. Zhenghzou Sunward Tech. Co. Ltd., 8:13-cv-1595-T-35TBM, 2014 WL 12620804, at *3 (M.D. Fla. Apr. 4, 2014) (internal quotation marks and citations omitted); see also Reply [D.E. 58 at 8] (same).  Given that Grillo's does not reside in Florida, Grillo's alleged injury did not occur in Florida; hence, these allegedly tortious acts cannot serve as to satisfy Section 48.193(1)(a)(2).  See, e.g., Jackson v. Grupo Industrial Hotelero, S.A., No. 07-22046-CIV, 2008 WL 4648999, at *6 (S.D. Fla. Oct. 20, 2008) ("Plaintiff has not alleged Florida residency in the Complaint. . . . Accordingly, because Plaintiff's causes of action . . . arise somewhere other than Florida, Plaintiff has failed to establish personal jurisdiction against either Defendant[] . . . under [the tortious act prong] of Florida's Long-Arm Statute.").

Additionally, although Grillo's contends that Patriot's alleged Florida-based conduct was "essential" to the success of its purported misappropriation because "Patriot needed to source

cucumbers from Florida's Falkner Produce", see Response [D.E. 51 at 9–10], the alleged purchase of these Florida-grown cucumbers is not the act upon which Grillo's bases its claims for trade secret misappropriation of its Recipes and Processes.  See Cable/Home, 902 F.2d at 857; see also RMS Titanic, Inc. v. Kingsmen Creatives, Ltd., No. 3:13-cv-463-J-20-TEM, 2013 WL 12091142, at *3 (M.D. Fla. Aug. 7, 2013) (finding, in a case alleging trade secret misappropriation of the design for a *Titanic* exhibition, that "Defendants' purchase of the ice-berg [prop] [from a non-party, Florida-based company] [was] not the act on which Plaintiffs based their causes of action" and was insufficient to assert personal jurisdiction under Section 48.193(1)(a)(2)).

Thus, Grillo's has failed to establish that this Court has personal jurisdiction over Patriot based on the Florida long-arm statute's tortious act prong.

### 2.  *Minimum contacts*

Notwithstanding Grillo's failure to satisfy the Florida long-arm statute, for the sake of completeness, the undersigned also considers whether Patriot has sufficient "minimum contacts" with Florida to satisfy the Due Process Clause of the Fourteenth Amendment.

"In specific personal jurisdiction cases, [courts] apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"  Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013) (citing Burger King Corp., 471 U.S. at 472–75).  To assess purposeful availment, courts consider whether the defendant's contacts with the forum state are related to the cause of action; involve an act by which the defendant purposefully availed himself of the

privileges of doing business in the forum; and are such that the defendant would reasonably anticipate being haled into court in the forum. Id. at 1357. "The question is whether a defendant has followed a course of conduct directed at the forum state, so that the state has the power to subject the defendant to judgment concerning that conduct." RMS Titanic, 2013 WL 12091142, at *5 (citing J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2789 (2011)).

Patriot argues that Grillo's fails to meet its burden of satisfying the first two prongs of the test set forth in Louis Vuitton, namely, that Grillo's trade secret misappropriation claims arise out of or relate to any of Patriot's contacts with Florida; and that Patriot has purposefully availed itself of Florida jurisdiction. See Motion to Dismiss or Transfer [D.E. 42 at 16]. Specifically, Patriot argues that none of its purported Florida-based contacts relate to Grillo's claims for trade secret misappropriation; and that "all of the conduct relevant to Grillo's claims occurred in New Jersey", where Patriot has its principal place of business. Id. To that end, Patriot proffers the McEntee Declaration, wherein Mr. McEntee describes the structure of Patriot's deal with Whole Foods as follows:

> Patriot and Whole Foods . . . structured their deal to have Patriot manufacture and offer for pickup the Whole Foods 365 pickles [Freight on Board ("FOB")] **Wayne, New Jersey**. This deal was memorialized in the Private Label Supplier Agreement for Whole Foods Market Proprietary Products entered into between Patriot and United Natural Foods, Inc. ("UNFI"), Whole Foods' primary wholesale grocery distributor, dated January 19, 2023 (the "UNFI Agreement"). The UNFI Agreement is attached to the Amended Complaint as Exhibit E.

> Pursuant to the UNFI Agreement, Patriot produces and packages the Whole Foods 365 pickles and sells those pickles to UNFI. . . . All Whole Foods 365 pickles are produced and packaged at Patriot's facilities in **Wayne, New Jersey**.

> Additionally, as stated in the UNFI Agreement, UNFI is required to pick up the Whole Foods 365 pickles at Patriot's loading dock . . . in **Wayne, New Jersey**.

> Upon pickup of the Whole Foods 365 pickles by UNFI, title and risk of loss of the pickles pass to UNFI.

12

> UNFI then ships and delivers the Whole Foods 365 pickles, which Whole Foods ultimately sells in its stores.
>
> Patriot does not ship . . . sell . . . [or] market Whole Foods 365 pickles in Florida or anywhere else.

See McEntee Decl. [D.E. 42-1 ¶¶ 8–15] (emphasis added).

In response, Grillo's again relies on Patriot's sourcing and shipment activity to substantiate its position that Patriot's contacts with Florida are related to or have given rise to Grillo's claims. See Response [D.E. 51 at 11] (citing Sculptchair, 94 F.3d at 631). Grillo's further contends that Patriot has purposefully availed itself of the privilege of conducting activities in Florida because Patriot has "place[d] a product into the stream of commerce" and engaged in additional conduct that "indicate[s] an intent to serve the market in [Florida]." See Response [D.E. 51 at 11] (internal quotation marks omitted) (citing Vermeulen v. Renault, U.S.A., Inc., 985 F.2d 1534, 1547 (11th Cir. 1993)). However, the McEntee Declaration, which remains unrebutted by Grillo's, establishes that Patriot's involvement with Whole Foods 365 pickles ends in Wayne, New Jersey, at which point, Whole Foods' distributor, UNFI, ships and delivers the pickles for sale at Whole Foods stores. See McEntee Decl. [D.E. 42-1 ¶¶ 8–15]. As a result, "Patriot [itself] does not ship . . . sell . . . [or] market Whole Foods 365 pickles in Florida". Id. ¶¶ 13–15.

Additionally, Grillo's reliance on Vermeulen for establishing purposeful availment is misplaced. See Response [D.E. 51 at 12]. Grillo's claims that UNFI's role as a "middleman" in Patriot's deal with Whole Foods does not defeat jurisdiction over Patriot in Florida, citing to the Eleventh Circuit's observation in Vermeulen that "a truly interstate [or international] business may not shield itself from suit by a careful but formalistic structuring of its business dealings." Vermeulen, 985 F.2d at 1548 (alteration in original) (internal quotation marks and citations omitted). There, in assessing whether the United States had personal jurisdiction over a French

car manufacturer and designer in a products liability suit stemming from a car accident, the Vermeulen court noted that "the fact that title to the [] vehicles passed to [a marketer and distributor] in France rather than in the United States in no way determine[d] the degree of contacts between the United States and [the defendant car manufacturer and designer]." Id.  The Vermeulen court then concluded that the defendant had "engage[d] in [additional conduct]" that, in the aggregate, amounted to purposeful availment, including that the defendant had: designed the car for the American market; advertised the car in the United States; established channels for customers in the United States, including structuring American dealership operations and training personnel; and maintained a distribution network through which the cars were imported into the United States. Id. at 1549–51.  Here, the record is devoid of any evidence that Patriot has engaged in any Florida-based conduct of the sort that the Eleventh Circuit found significant in Vermeulen; hence, Grillo's has failed to establish that Patriot has purposefully availed itself of the privilege of conducting business in Florida.[9]

Because it has also failed to meet the due process "minimum contacts" requirement, Grillo's has not shown that this Court has personal jurisdiction over Patriot.

---

[9] Grillo's reliance on Moceri v. BJ's Wholessale Club, Inc., No. 18-80979-CV, 2019 WL 2009248 (S.D. Fla. Jan. 11, 2019), a products liability suit involving a contaminated nectarine, is also misplaced given that specific personal jurisdiction in that case was predicated on Fla. Stat. § 48.193(1)(a)(6)(b), which provides for jurisdiction "over anyone who '[c]ause[s] injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, . . . [p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.'" Moceri, 2019 WL 2009248, at *2 (alterations in original) (citation omitted).  After concluding that specific jurisdiction existed under that prong of the Florida long-arm statute, the Moceri court also found that the defendant, a fruit packager, had minimum contacts with Florida due to evidence that a large volume of its products was shipped to Florida; and that it had indemnified BJ's "for all losses arising out of a defect in [the defendant's] products". Id. at *4.  As a result, the Moceri court concluded that the defendant "should have contemplated that it could reasonably be haled in court in any state in which BJ's operates stores and sells [the defendant's] products, including Florida." Id.  Here, in addition to predicating its theory of specific personal jurisdiction on an entirely different prong of the Florida long-arm statute, Grillo's does not allege any comparable additional conduct by Patriot sufficient to establish purposeful availment.

## VENUE

Next, Patriot argues that the Amended Complaint fails to establish proper venue in the Southern District of Florida; and that, alternatively, the Court should transfer venue to the District of New Jersey pursuant to Section 1404(a).  See Motion to Dismiss or Transfer [D.E. 42 at 17–22].  As more fully discussed below, the undersigned concludes that venue is improper in this district and recommends that the case be transferred to the District of New Jersey pursuant to Section 1404(a).

### 1.  *Venue in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2)*

Patriot argues that, despite Grillo's invocation of 28 U.S.C. § 1391(b)(2) (hereafter, "Section 1391(b)(2)") to establish venue, the Amended Complaint fails to allege that a "'substantial part of the events or omissions giving rise to the claim[s]' at issue here occurred within this District." See Motion to Dismiss or Transfer [D.E. 42 at 17] (citing Am. Compl. [D.E. 36 ¶ 13]).  Patriot contends that Grillo's reliance on Whole Foods' sale of Whole Foods 365 pickles in the Southern District of Florida to establish venue improperly shifts the focus of the venue inquiry from the relevant activities of Patriot toward "generic conduct [by Whole Foods] that would justify venue in Districts all across the country."  See Motion to Dismiss or Transfer [D.E. 42 at 17–18] (citing Greiser v. Drinkard, No. 17-cv-60975, 2017 WL 7788165, at *1 (S.D. Fla. Dec. 8, 2017); Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003)).  Patriot further argues that a claim-by-claim analysis forecloses venue in the Southern District of Florida because none of the events giving rise to Grillo's claims for trade secret misappropriation or breach of contract are alleged to have taken place in this district.  Id. at 18–19.  Grillo's counters that "since the 'harm or injury was suffered' by Grillo's in this district, venue is appropriate here under [Section 1391(b)(2)."  See Response [D.E. 51 at 14] (citing Mobile Diagnostic Imaging, Inc. v.

Gormezano, No. 12-60888-CIV, 2012 WL 3244664, at *3 (S.D. Fla. Aug. 9, 2012)).  However, as noted above with respect to personal jurisdiction, Grillo's does not reside in Florida and, therefore, did not suffer harm or injury in the Southern District of Florida.  Further, Grillo's does not explain how sales activities by *Whole Foods* in the Southern District of Florida involved Patriot to any degree.  Cf. Mobile Diagnostic Imaging, 2012 WL 3244664, at *3 (finding that "a substantial part of the events giving rise to [the] [p]laintiff's claims for theft, trade secret violations, tortious interference with business, breach of fiduciary duty, and conversion [] took place within this district" where the plaintiff was a Florida corporation, the agreement was negotiated in Florida and included forum clauses for the Southern District of Florida, the partnership was created as a result of communications occurring in or directed to Florida, and the defendant obtained access to trade secret information in Florida, thereby resulting in damage to the plaintiff in this forum).  Given that Grillo's has failed to carry its burden of establishing that any, let alone a substantial part of, Patriot's acts relevant to trade secret misappropriation or breach of contract occurred in the Southern District of Florida, laying of venue here is improper.[10]

### 2. *Transfer pursuant to Section 1404(a)*

Although improper venue is grounds for dismissal pursuant to Rule 12(b)(3), Patriot argues

---

[10] In its Response, Grillo's attempts to argue, for the first time, that venue is also appropriate in this district under 28 U.S.C. § 1391(b)(1) (hereafter, "Section 1391(b)(1)"), which provides for venue in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  See Response [D.E. 51 at 14–15].  Grillo's argues that since "Patriot is a corporation, it is a resident for venue purposes of any judicial district in which [it] is subject to the court's personal jurisdiction" and further, in states with more than one district, "in the district within which it has the most significant contacts."  Id. (quotation marks omitted) (quoting 28 U.S.C. §§ 1391(c)(2), (d)).  However, as detailed above, Grillo's has failed to establish that Patriot is subject to personal jurisdiction in Florida or that its contacts are sufficient to lay venue in the Southern District of Florida.  Therefore, Section 1391(b)(1) is inapplicable here.  Additionally, Grillo's did not plead Section 1391(b)(1) as a basis for venue in the Amended Complaint, focusing its allegations instead exclusively on Section 1391(b)(2).  See Am. Compl. [D.E. 36 ¶ 13] ("Venue in this Court is proper because 'a substantial part of the events . . . giving rise to [Plaintiff's] claims occurred' in this district. 28 U.S.C. § 1391(b)(2).").  "[A]rguments raised for the first time in a Response to a Motion to Dismiss are not properly before the Court."  Oginsky v. Paragon Props. of Costa Rica LLC, 784 F. Supp. 2d 1353, 1368 (S.D. Fla. 2011).

that, instead of dismissing it, this Court should transfer the case pursuant to Section 1404(a) "because this action would be better heard in the District of New Jersey". See Motion to Dismiss or Transfer [D.E. 42 at 19–20]. Section 1404(a) "embodies a codification and revision of the *forum non conveniens* doctrine". Sorensen v. Am. Airlines, Inc., No. 22-cv-20265, 2022 WL 2065063, at *2 (S.D. Fla. June 8, 2022) (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981)). "In determining the appropriateness of transfer . . . the district court is [first] tasked with determining whether the action could have been pursued in the venue to which transfer is sought." Sorensen, 2022 WL 2065063, at *3 (citation omitted). "With regard to this first prong, an action 'might have been brought' in any court that has subject-matter jurisdiction, where venue is proper, and where the defendant is amenable to process issuing out of the transferee court." Id. (citations omitted). "Second, courts assess whether convenience and the interest of justice require transfer to the requested forum", which involves consideration of several factors. Id. (quotation marks and citations omitted). The relevant factors are listed below.

Although the parties do not specifically discuss whether the case "might have been brought" in the District of New Jersey, the undersigned finds that the District of New Jersey, like the Southern District of Florida, would have federal question jurisdiction over Grillo's DTSA claim and supplemental jurisdiction over Grillo's state law claims;[11] that venue would be proper there, as the parties' co-packing relationship arose in New Jersey and Patriot resides in New Jersey;

---

[11] Patriot notes, and Grillo's does not dispute, that "[t]here is no reason to believe that the District of New Jersey would be less familiar in applying federal trade secret law or that Grillo's could not amend its Amended Complaint to assert similar state law claims—and given the location of the co-packing arrangement between Patriot and Grillo's, there is a good chance New Jersey law applies to some issues." See Motion to Dismiss or Transfer [D.E. 42 at 21]; see also Soc. Language Processing, Inc. v. Ott, No. 12-62286-CIV, 2013 WL 1442168, at *5 (S.D. Fla. Apr. 9, 2013) (transferring action involving FUTSA claim to the Northern District of New York upon a finding that "Defendants' allegedly unlawful acts principally took place in New York [and] none of the alleged conduct took place in Florida", thereby making it "likely that New York law would govern [the] action").

and, accordingly, that Patriot would be amenable to service of process in New Jersey. The parties

do disagree as to whether consideration of the following factors weighs in favor of transferring

this case to the District of New Jersey:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Id. at *4 (quoting Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). Patriot

contends that these factors "overwhelmingly support a transfer" because the witnesses and relevant

documents are in New Jersey; Patriot is located in New Jersey and Grillo's is located close by in

Massachusetts; the locus of operative facts occurred in New Jersey, as the parties' co-packing

relationship arose there; the compulsion of process in New Jersey would be easier given that the

witnesses are located in New Jersey or the Northeast; the financial strain would be less for both

parties; the District of New Jersey is equally equipped to evaluate federal trade secret and state

contract law; Grillo's choice of forum is entitled to less deference given that it is not domiciled in

Florida; and trial efficiency, fairness, and convenience for the parties would be better served if the

action were transferred to New Jersey. See Motion to Dismiss or Transfer [D.E. 42 at 20–21].

Conversely, Grillo's argues that application of these factors does not weigh in favor of

disturbing its choice of forum because they are "neutral, or at worst, weigh only slightly in favor

of transfer." See Response [D.E. 51 at 16]. Specifically, Grillo's argues that the first, third,

seventh, and ninth factors are neutralized by this Court's presumed subpoena power over the same

witnesses; the availability of direct flights from Boston (where Grillo's is located) to Newark

(where Patriot is located) and to Miami (the forum); this Court's commensurate familiarity with

the governing law; and statistics illustrating that this Court has a lower average time-to-trial than the District of New Jersey.  See Response [D.E. 51 at 15–16].  Grillo's also contends that the eighth factor tips in its favor because "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."  Id. at 15 (internal quotation marks omitted) (quoting Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996)).

However, it is well established that, in the context of Section 1404(a), "less deference is given to a Plaintiff's choice of forum when Plaintiff does not choose a home forum."  Diamond Resorts U.S. Collection Dev., LLC v. Pandora Marketing, LLC, No. 20-cv-80143, 2020 WL 6504627, at *3 (S.D. Fla. June 18, 2020); see also Game Controller Tech. LLC v. Sony Comput. Ent. Am. LLC, 994 F. Supp. 2d 1268, 1276 (S.D. Fla. 2014) ("[W]here the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff, the choice of forum is entitled to less consideration.") (internal quotation marks and citation omitted).  As detailed above with respect to personal jurisdiction and venue, Grillo's is neither at home in the Southern District of Florida, nor does it adequately allege that the operative facts underlying its trade secret misappropriation and breach of contract claims occurred in this district.  On this basis, the undersigned concludes that the fourth factor, which involves the locus of operative facts, and the eighth factor, which involves the plaintiff's choice of forum, do not weigh against transferring this case to the District of New Jersey.

Furthermore, with respect to the second and fifth factors, Grillo's does not dispute that the location of relevant documents and witnesses is in New Jersey or the Northeast.  See Reply [D.E. 58 at 11].  Indeed, given that Patriot produces and packages Whole Foods 365 pickles at its facilities in Wayne, New Jersey, see McEntee Decl. [D.E. 42-1 ¶ 9], "it seems logical that the majority of the crucial witnesses reside in" or around New Jersey.  See Corioliss, Ltd. v. Corioliss

USA, Inc., No. 08-21579-CV, 2008 WL 4272746, at *2 (S.D. Fla. Sept. 17, 2008). Finally, the undersigned finds that the ninth factor weighs in favor of transfer given that an earlier filed case involving the same parties is pending in the District of New Jersey; and a transfer "will prevent multiple actions involving the same witnesses and overlapping facts from being held in two jurisdictions." See Reply [D.E. 58 at 11]; see also Grillo's Pickles, Inc. v. Patriot Pickle Inc. et al, No. 2:23-cv-00011-MCA-AME (D.N.J.) (hereafter, "Grillo's I") (asserting claims against Patriot and others for false advertising under the Lanham Act and common law unfair competition).[12]

Thus, on balance, application of the discretionary factors weighs in favor of transferring this case to the District of New Jersey. See, e.g., Game Controller, 994 F. Supp. 2d at 1277 (finding that the defendant had "carried its high burden of showing the balance of convenience strongly favor[ed] transfer" when five factors weighed in its favor, three factors were neutral, and one "potentially" weighed in the plaintiff's favor). Thus, the undersigned recommends that the case be transferred pursuant to Section 1404(a).

## SHOTGUN PLEADING

Patriot further argues that the Amended Complaint should be dismissed because it is a shotgun pleading that violates Rule 8(a)(2). See Motion to Dismiss or Transfer [D.E. 42 at 22–

---

[12] Relatedly, Patriot argues that the "first-filed" rule supports transfer to the District of New Jersey given that Grillo's I predates this action, involves the same parties, and involves similar claims as those asserted here. See Motion to Dismiss or Transfer [D.E. 42 at 22] (explaining how the rule "provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case") (internal quotation marks and citation omitted). Although Grillo's contends that the cases are too disparate because the causes of action differ and Grillo's I involves other defendants in addition to Patriot, see Response [D.E. 51 at 16], under the first-filed rule, "[n]either the issues nor the parties in both cases need be identical. . . . What is important is that the rule is applied to promote economy, consistency and comity." Wiener v. Vignes, No. 19-cv-23884, 2019 WL 13225115, at *2 (S.D. Fla. Dec. 3, 2019) (citations omitted). Indeed, the undersigned finds that economy, consistency, and comity would be promoted by transferring this case to the District of New Jersey, where the parties are already engaged in litigation as to substantially similar allegations. See Reply [D.E. 58 at 12] ("Both sets of allegations accuse Patriot of using Grillo's recipes to help develop a competitor's pickles that are 'nearly identical' or 'incredibly similar' to Grillo's pickles.").

23].  In the Eleventh Circuit, "[t]here are four basic types of shotgun pleadings: (1) those in which each count adopts the allegations of all preceding counts; (2) those that are simply replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) those that do not separate each cause of action or claim for relief into different counts; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which."  Bargoot v. School Bd. of Palm Beach Cnty., No. 21-80849-CIV, 2022 WL 293313, at *2 (S.D. Fla. Feb. 1, 2022) (citing Weiland, 792 F.3d at 1321–23; Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002)).  Patriot argues that the Amended Complaint falls into the first category because it "incorporates the allegations of all preceding Counts in each successive Count" and, thus, fails to give Patriot "adequate notice of the claims against" it.  See Motion to Dismiss or Transfer [D.E. 42 at 22–23] (internal quotation marks and citation omitted).  Indeed, Counts II and III "repeat[] and reallege[] each and every allegation contained in the preceding paragraphs above as if fully set forth [therein]."  See Am. Compl. [D.E. 36 ¶¶ 42, 52].  Accordingly, under Eleventh Circuit precedent, the Amended Complaint is subject to dismissal as a shotgun pleading.

Should the case be transferred in accordance with the undersigned's recommendation, Grillo's will need to amend its complaint to comport with the Third Circuit's analogous prohibition against shotgun pleadings.  See Cambridge Mut. Fire Ins. Co. v. Stihl Inc., No. 22-05893, 2023 WL 5928319, at *2 (D.N.J. Sept. 12, 2023) ("The Third Circuit has criticized the all too common shotgun pleading approach to complaints, which conflicts with the mandates of Rule 8(a)(2).  . . . The Court of Appeals for the Eleventh Circuit has addressed shotgun pleadings in detail, and district courts within the Third Circuit often cite to the Eleventh Circuit for this law.") (quotation marks and citations omitted).  Therefore, the undersigned recommends that the Amended

Complaint be dismissed as a shotgun pleading, without prejudice to Plaintiff further amending its pleading to cure this defect.

## FAILURE TO STATE A CLAIM

Finally, Patriot argues that the Amended Complaint fails to plausibly allege claims for trade secret misappropriation and breach of contract.  See Motion to Dismiss or Transfer [D.E. 42 at 23–27].  As more fully discussed below, the undersigned concludes that dismissal of Grillo's claims for trade secret misappropriation and breach of contract pursuant to Rule 12(b)(6) would be premature at this juncture.

### 1.  Counts I and II—Trade Secret Misappropriation under FUTSA and DTSA

 "Under the federal DTSA, a plaintiff must show the following to make out a prima facie case: that it (i) possessed information of independent economic value that (a) was lawfully owned by the plaintiff and (b) for which the plaintiff took reasonable measures to keep secret, and (ii) the defendant used and/or disclosed that information, despite (iii) a duty to maintain its secrecy."  Measured Wealth Priv. Client Grp., LLC v. Foster, No. 20-cv-80148, 2020 WL 3363716, at *3 (S.D. Fla. July 13, 2020) (quotation marks and citation omitted); see also Motion to Dismiss or Transfer [D.E. 42 at 23] (same).  Likewise, "[t]o prevail on a FUTSA claim, a plaintiff must demonstrate that (1) it possessed a 'trade secret' and (2) the secret was misappropriated."  Measured Wealth, 2020 WL 3363716, at *4 (internal quotation marks and citation omitted).

In the Amended Complaint, Grillo's defines its trade secret as follows: "Grillo's recipes and processes for its 'Hot Pickle Spears,' 'Pickle Spears,' 'Dill Pickle Chips,' and 'Whole Dills,' including the ratios and amounts of each ingredient used to manufacture each type of pickle and the types of and specifications for the ingredients used to make each type of pickle."  See Am. Compl. [D.E. 36 ¶ 15].  Grillo's further alleges that "Patriot's Whole Foods 365 pickles bear

virtually identical nutritional information and are made from precisely the same ingredients as Grillo's pickles." Id. ¶ 26.  Thus, Grillo's alleges that "Patriot used Grillo's confidential recipes and manufacturing processes . . . to manufacture and ship Whole Foods 365 pickles, and in order to become Whole Foods' manufacturer, Patriot also disclosed these same confidential recipes and manufacturing processes to Whole Foods." Id. ¶ 29; see also Response [D.E. 51 at 18–19] (same).

Patriot argues that Grillo's recipes and processes do not qualify as a "trade secret" under FUTSA and DTSA because they are based on generally known or readily ascertainable information and are not unique.  See Motion to Dismiss or Transfer [D.E. 42 at 23–24] ("It is no secret that pickles all require the basic ingredients of cucumbers, water, vinegar, and salt."). Grillo's counters, however, that it "does not, and has never, claimed that its list of ingredients is a protected trade secret."  See Response [D.E. 51 at 19–20].  The parties also dispute the extent to which evidence of differing sodium levels between Grillo's pickles and Patriot's Whole Foods 365 pickles affects Grillo's claims that Patriot used or disclosed Grillo's trade secrets.  Compare Motion to Dismiss or Transfer [D.E. 42 at 25] (arguing that this evidence does not "support the proposition that Patriot used any of Grillo's purported trade secrets, such as the 'ratios and amounts of each ingredient'") with Response [D.E. 51 at 22] (arguing that Patriot "violated [] trade secret laws because the substance of Whole Foods 365 pickles are 'derived from' Grillo's trade[] secret recipes and processes"); see also Am. Compl. [D.E. 36 at 13–14] (photographic comparison of pickle labels).  However, "[t]he question whether [Grillo's] alleged trade secret is a 'trade secret' is not at issue at this stage."  777 Partners LLC v. Pagnanelli, No. 20-20172-CIV, 2022 WL 4597804, at *7 (S.D. Fla. Mar. 16, 2022) (citations omitted).  Rather, a plaintiff "need only describe the misappropriated trade secrets with reasonable particularity."  Id. at *8 (internal quotation marks and citations omitted).  Grillo's definition of its trade secret satisfies this lower standard.

Moreover, "this Court must take as true well-pleaded allegations." Id. Thus, in construing the well-pled allegations in the Amended Complaint in the light most favorable to Grillo's, the undersigned concludes that Grillo's claims for trade secret misappropriation regarding Patriot's use of its confidential recipes and manufacturing processes to manufacture and ship Whole Foods 365 pickles, and disclosure of the same to Whole Foods, survive dismissal.[13]

### 2. *Count III—Breach of Contract*

Patriot further argues that Grillo's claim for breach of contract fails as a matter of law because Grillo's bases its claim on an expired and, therefore, unenforceable agreement. See Motion to Dismiss or Transfer [D.E. 42 at 25–27]. In the Amended Complaint, Grillo's alleges that the parties signed a Mutual Nondisclosure Agreement ("NDA") in 2012 that was to "remain in full force and effect until such time as [Grillo's and Patriot] mutually agree to terminate it." See Am. Compl. [D.E. 36 ¶ 18 & Ex. I ¶ 7] (alterations in original). Conversely, Patriot argues that the NDA expired in 2017 because it also provided that "[t]he term of this agreement is five (5) years". See Motion to Dismiss or Transfer [D.E. 42 at 26] (citing Am. Compl. [D.E. 36 ¶ 18 & Ex. I ¶ 11]). "Where a contract is reasonably or fairly susceptible of different constructions, it is ambiguous, and because interpretation of ambiguous contracts potentially involves questions of fact, dismissal under Rule 12(b)(6) is inappropriate." Tenet Fla., Inc. on Behalf of Coral Gables Hosp. v. Global Excel Mgmt., Inc., No. 18-60580-CIV, 2018 WL 11457395, at *3 (S.D. Fla. Nov. 27, 2018) (quoting Ventana Hotels & Resorts, LLC v. Habana Libre Hotel, LLC, No. 18-60580-CIV, 2007 WL 2021940, at *2 (S.D. Fla. July 11, 2007)). Given the parties' competing

---

[13] Grillo's has since identified in a Notice Regarding Intent to Amend Complaint additional facts in support of its theory of misappropriation. See Notice Regarding Intent to Amend Complaint [D.E. 60] (notifying the Court of Grillo's intention to move to amend its pleading again to incorporate allegations of "systematic and widespread mislabeling of Whole Foods 365 pickles" as to their sodium content). This intention coupled with the undersigned's conclusion that Grillo's needs to amend its pleading to cure the shotgun pleading defects militate against further analysis of this issue at this juncture.

interpretations of the NDA's duration, the undersigned concludes that Grillo's breach of contract claim is not subject to dismissal at this stage of the proceeding.[14]

## **RECOMMENDATION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendant's Motion to Dismiss or Transfer [D.E. 42] be GRANTED IN PART as follows:

1. That the Amended Complaint be DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction and non-compliance with Rule 8(a)(2); and

2. That this action be TRANSFERRED to the District of New Jersey pursuant to Section 1404(a).

It is further RESPECTFULLY RECOMMENDED that Defendant's Motion to Dismiss or Transfer based on Grillo's failure to state a claim be DENIED WITHOUT PREJUDICE as premature.

Pursuant to Local Magistrate Judge Rule 4(b), the parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Beth Bloom, United States District Judge. Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal. See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993). Further, "failure to object in accordance

---

[14] To the extent that Patriot argues that Grillo's Pickles Inc., the plaintiff in this case, cannot enforce the agreements underlying this action because they were entered into by Patriot and Grillo's Pickles, LLC, see Motion to Dismiss or Transfer [D.E. 42 at 27], the undersigned has taken judicial notice of the Certificate of Merger and Cancellation of Grillo's Pickles, LLC with and into Grillo's Pickles, Inc., on file with the Secretary of the Commonwealth of Massachusetts Corporations Division. See Unopposed Request for Judicial Notice [D.E. 52]; see also Paperless Order Granting Request for Judicial Notice [D.E. 53]. Thus, the undersigned finds that this argument for dismissal of Grillo's breach of contract claim fails. See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc., 418 F. Supp. 3d 1075, 1081 (S.D. Fla. 2019) ("A court properly takes judicial notice of relevant public records in deciding a motion to dismiss[.]") (citing Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010)).

with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district

court's order based on unobjected-to factual and legal conclusions." <u>See</u> 11th Cir. R. 3-1 (I.O.P.

- 3).

      RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this <u>9th</u> day of

November, 2023.

                                                _____

                                                ALICIA M. OTAZO-REYES
                                                UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Beth Bloom
        Counsel of Record